435 N.W.2d 86 (1989)
Scott Dean TIEDEMAN, By and Through his legal guardians, Verdean TIEDEMAN and Judy Tiedeman, and Verdean Tiedeman and Judy Tiedeman, individually, Appellants,
v.
Robert MORGAN, et al., Respondents.
No. C1-88-1725.
Court of Appeals of Minnesota.
January 24, 1989.
Review Denied March 29, 1989.
*87 Douglas E. Schmidt, Sieben, Grose, Von Holtum, McCoy & Carey, Minneapolis, for appellants.
James H. Turk, Blethen, Gage & Krause, Mankato, Gale E. Fisher, Fisher & Hughes, Sioux Falls, S.D., for respondents.
Heard, considered and decided by CRIPPEN, P.J., and BOWEN[*] and STONE,[*] JJ.

OPINION
CRIPPEN, Judge.
Appellant, who suffered severe brain damage after an episode of heart failure, challenges a summary judgment in favor of members of a family appellant was visiting when his episode of illness occurred. We reverse the trial court conclusion that respondents are immune from liability under Minnesota's Good Samaritan statute.

FACTS
On April 15, 1986, appellant Scott Tiedeman, then age 17, was visiting in the home of Nickole Morgan, then age 15, who he had been dating for about four and one-half months. Nickole's mother, respondent Diane Morgan, had watched a movie with Scott and Nickole until about 9:30 p.m., and the couple then went to a basement recreation room to watch television. Respondent Robert Morgan, Nickole's father, arrived home at about 10:00 p.m.
Shortly before 10:30 p.m., Scott Tiedeman became ill. Scott suffered from heart ailments, and the Morgans were aware that Scott had undergone heart surgery.
At 10:26 p.m., Nickole Morgan made a 911 telephone call for assistance. Robert Morgan cancelled this call for help. Morgan says he volunteered to have an ambulance come to the house, but that appellant declined, saying he was "fine." Nickole then brought Scott a towel to wipe perspiration from his face, and Robert Morgan says Scott again declined to be taken to the hospital and said he was fine. Robert Morgan left the young couple in the recreation room at that time. His wife had gone to bed earlier.
At about 10:50 p.m., Nickole Morgan screamed for the attention of her parents. Scott was then lying on the recreation room couch, pale, cool and clammy, with his eyes half open. After the Morgans first debated whether they could get Scott to the hospital in their car, an ambulance was summoned. At about 10:58 p.m., the Morgans observed that Scott had stopped breathing, and shortly thereafter the ambulance arrived. Ambulance attendants found appellant had no pulse, blood pressure or respiration. Appellant's heart rhythm was restored, but a prolonged lack of oxygen caused him severe and permanent brain damage.
In an affidavit, a physician observed that appellant's brain damage could have been avoided with earlier treatment. Another physician stated by affidavit that appellant's illness involved cardiac arrest which probably was a sustained, uninterrupted episode.
In February 1987, appellant initiated an action against the Morgans, claiming that they were in control of the premises of their residence, and that they had negligently attended to appellant or interfered with efforts to provide assistance for him. The trial court granted the Morgans a summary judgment, stating that they were entitled to immunity under the Good Samaritan statute, and that the evidence did not support an exception to statutory immunity for wanton or reckless rendering of care.

ISSUE
Was liability on the Morgans' duty of care relieved by the immunity clause of the Good Samaritan statute?

*88 ANALYSIS
The trial court recognized the existence of a common law duty of care for those who know or should know of the needs of one in circumstances under their control. The court concluded, however, that this duty was not unlike one for the rendering of reasonable assistance under Minnesota's Good Samaritan statute, and that respondents were thus relieved of liability for their rendering of care. Minn.Stat. § 604.05 (1986). Subdivision 1 of the act creates a duty to give reasonable assistance at the scene of an emergency, and subdivision 2 eliminates liability for acts or omissions of any person "rendering" emergency care, advice or assistance. Id. The immunity provision does not apply for those who act in "a willful and wanton or reckless manner" in providing care. Id.
Based on both the meaning and the purpose of the Good Samaritan statute, we conclude it does not apply to the pre-existing duty of care asserted here. Moreover, should there be any diminution of this common law duty, one recognized by the Minnesota Supreme Court for over 80 years, neither this court nor the trial court should engage in that construction of the law in the absence of guidance from the supreme court.
a. The legal duty to assist. A special duty of care in controlled circumstances was first recognized in Depue v. Flateau, 100 Minn. 299, 111 N.W. 1 (1907). There the court dealt with the conduct of a farm family who entertained a businessman for dinner but evidently refused to provide care needed after the guest suffered a fainting spell and demonstrated conduct showing he continued to be seriously ill and too weak to care for himself. The court acknowledged that under the common law Good Samaritan doctrine there is no duty to volunteer help for the sick, but added that certain relationships with the distressed person create a duty to provide help. Id. at 301, 111 N.W. at 2.
The facts of this case bring it within the more comprehensive principle that whenever a person is placed in such a position with regard to another that it is obvious that, if he does not use due care in his own conduct, he will cause injury to that person, the duty at once arises to exercise care commensurate with the situation in which he thus finds himself, and with which he is confronted, to avoid such danger.
Id. at 303, 111 N.W. at 2. The court added that an invitee upon the premises of another is "entitled to a higher degree of care than those who are present by mere sufferance." Id. at 303, 111 N.W. at 2.
The special duty in circumstances one controls has had continuous recognition by the Minnesota Supreme Court since Depue was decided. The court last discussed the subject in 1979, eight years after the enactment of Good Samaritan immunity in Minnesota. Regan v. Stromberg, 285 N.W. 2d 97 (Minn.1979). In Regan, the supreme court cited with approval the following trial court instruction:
Where one is in charge of another, or who being under no duty to do so takes charge of another, and who knows or in the exercise of reasonable care should know that the physical or mental condition of such person is such that it is reasonably foreseeable that such person would be exposed to injury, then the person in charge must use reasonable care to prevent such exposure.
Id. at 100.
b. Good Samaritan legislation. Recognizing the absence of a Good Samaritan duty, the Minnesota Legislature first addressed the topic with a declaration of immunity for those who volunteer to render emergency care. Minn.Stat. § 604.05 (1971) (enacted by 1971 Minn.Laws ch. 218, § 1). The declaration of immunity was later accompanied by a statutory duty to volunteer reasonable assistance. Minn. Stat. § 604.05, subd. 1 (1984) (enacted by 1983 Minn.Laws ch. 319, § 1). It is evident to us that these enactments deal with the historic Good Samaritan law topic of volunteering assistance to one with whom a person has no special relationship. Until modified by statute in 1983, no duty to volunteer assistance existed. This statutory duty contrasts markedly with established *89 common law duties, such as the duty recognized in Minnesota since Depue.
Respondents contend and we recognize that the immunity provision of the Good Samaritan statute applies to "any person" rendering emergency care. Minn.Stat. § 604.05, subd. 2; see Gertken v. Farmers Elevator of Kensington, 411 N.W.2d 550, 555 (Minn.Ct.App.1987) (Leslie, J., dissenting), pet. for rev. denied (Minn. Sept. 1, 1987). Nevertheless, it is evident that the rendering of care which is addressed by the statute is that course of conduct which has not historically involved a recognized legal duty.
It has been observed that Good Samaritan statutes are aimed at inducing voluntary acts by those who do not have a pre-existing duty. Lee v. State, 490 P.2d 1206 (Alaska 1971). As the Alaska court observed:
A rescuer under a pre-existing duty to rescue would not need the added inducement of immunity of civil liability for his ordinary negligence.
Id. at 1209 n. 7. Other courts agree. Praet v. Borough of Sayreville, 218 N.J. Super. 218, 223, 527 A.2d 486, 489-90, cert. denied, 108 N.J. 681, 532 A.2d 253 (1987) (statute not intended to confer immunity on one with a pre-existing duty); Lindsey v. Miami Development Corp., 689 S.W.2d 856, 860 (Tenn.1985) (Good Samaritan statute affords no protection to those under a pre-existing duty to render aid).
c. Respondents' duty. The facts here are not unlike those in Depue. Appellant was a guest in the home of respondents. Respondents knew appellant had heart problems and that he was suffering an episode of illness. From the inception of the episode, appellant's circumstances were sufficiently alarming to prompt Nickole Morgan, independently, to seek help with an emergency 911 call. A genuine fact issue exists on the reasonableness of respondents' conduct during a period of nearly 25 minutes when assistance was not sought for appellant. Undisputed evidence shows that appellant's severe injury was a consequence of the delay in obtaining medical treatment.
Carefully examining the evidence here, the trial court concluded that respondents were entitled to a summary judgment and that they did not act in a willful and wanton or reckless manner in dealing with appellant's illness. Thus, the trial court determined that the statutory immunity clause, which it found applicable, controlled the circumstances of the case as a matter of law. The trial court was not asked to determine and the record does not permit a conclusion that there is no genuine issue of material fact on the question of whether respondents violated the duty of care determined in Depue and its progeny.
The trial court and the parties have also dealt with the question of whether the immunity clause of the Good Samaritan statute is properly applied in circumstances where inaction, not the rendering of assistance, is a primary facet of appellant's claim. See Gertken, 411 N.W.2d at 554, 556 (Leslie, J., dissenting, noting that one is not relieved of liability under the statute insofar as damages are attributable to the failure to act). Because we decide the immunity provision does not apply in the circumstances of the case, we need not reach a conclusion on this additional dispute of the parties.

DECISION
It was error to relieve respondents of liability under a statute which does not deal with the duty of care applicable under the circumstances of this case.
REVERSED.
NOTES
[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.