Wayne R. SWENSON,
et al., Appellants,

v.

WASECA MUTUAL INSURANCE
COMPANY, Respondent.

No. C5–02–651.

Court of Appeals of Minnesota.

Dec. 10, 2002.

Mark S. Brown, Murnane, Conlin, White & Brandt, P.A., St. Paul, for appellants.

James H. Turk, Blethen, Gage & Krause, P.L.L.P., Mankato, for respondent.

Considered and decided by HUDSON, Presiding Judge, PETERSON, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Kelly Swenson, 13 years old, suffered an apparent dislocated knee when her snow- mobile went into a ditch. A passing motorist, Lillian Tiegs, stopped and, after first unsuccessfully attempting to summon help by way of a cell phone, offered to give Swenson a ride to a nearby hospital in New Prague, Minnesota. Tiegs agreed to make a brief stop at the Tiegs' residence, less than a quarter-mile away, to allow Swenson's companions to park their snow- mobiles there and accompany Swenson to the hospital. As Tiegs pulled into traffic, a speeding tractor-trailer struck her vehicle. Swenson died as a consequence of the traffic accident.

The respondent insurer, Waseca Mutual Insurance Company, was granted sum- mary judgment by the district court, hold- ing that Tiegs's actions were protected by Minnesota's Good Samaritan law. The district court ruled Tiegs was providing assistance at the scene of an emergency and during transit to a hospital and was therefore immune from liability. Minn. Stat. § 604A.01, subd. 2 (2000). Appellant argues that the district court erred as a matter of law by holding (1) that the Good Samaritan law applies to negligent driving while transporting an injured person from an accident scene to a hospital and (2) that Tiegs was acting at the scene of an emer- gency. We affirm.

## FACTS

On January 19, 1998, Kelly Swenson, 13 years old, injured her leg when the snow- mobile she was driving struck a drainage culvert in the north ditch along Highway 19, west of New Prague. Swenson appar- ently dislocated her knee during the acci- dent. With Swenson at the time of the accident were her sister and three friends.

Lillian Tiegs, a passing motorist, in re- sponse to waving from Swenson's compan- ions, stopped her vehicle on the shoulder of Highway 19 and asked if any assistance

was necessary. Tiegs first attempted to summon help by calling 911, but she was unable to raise a signal on her cell phone. Tiegs then agreed to drive Swenson to the hospital in New Prague. The rest of Swenson's group decided to drive their snowmobiles to the home of Tiegs, less than a quarter of a mile away from the scene of the accident. The plan was to leave the snowmobiles at the Tiegs residence and then ride in the Tiegs' van to the hospital.

After Swenson was placed in the van, Tiegs attempted to make a U-turn from the westbound side of the highway to the eastbound lane. Before Tiegs had completed the U-turn, a tractor-trailer exceeding the posted speed limit and traveling in the eastbound lane struck the passenger side of the Tiegs' van. Kelly Swenson died as a result of injuries she sustained in this accident.

The Swenson family brought a wrongful-death action against both the tractor-trailer driver and Tiegs. The Swensons settled with the driver of the tractor-trailer and then brought an underinsured-motorist claim against Waseca Mutual, the insurer for Tiegs. Waseca Mutual moved for summary judgment, alleging that under Minnesota's Good Samaritan law, § 604A.01, subd 2, Tiegs was immune from liability. The district court granted the motion for summary judgment, concluding that Minnesota's Good Samaritan law does not require the person receiving assistance to be in "grave physical harm." The district court also concluded that Tiegs had otherwise met the requirements of the statute and was entitled to immunity.

## ISSUES

I. Does Minnesota's Good Samaritan law provide immunity from a negligence claim where a layperson attempts to transport an injured per-

son from the scene of an accident to a health-care facility?

II. Is a layperson who provides transportation for an injured person to a health-care facility, where the transportation utilizes an indirect route, or a brief stop on the way to the facility acting at the scene of an emergency and protected from liability as provided by Minnesota's Good Samaritan law?

## ANALYSIS

On appeal from summary judgment, this court asks two questions: (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, reviewed de novo by the appellate courts. *Lefto v. Hoggsbreath Enter. Inc.*, 581 N.W.2d 855, 856 (Minn.1998). Further "statutory interpretation is a question of law subject to de novo review." *Schons v. State Farm Mut. Auto. Ins. Co.*, 621 N.W.2d 743, 745 (Minn.2001).

I. Does Minnesota's Good Samaritan law provide immunity from a negligence claim where a layperson attempts to transport an injured person from the scene of an accident to a health-care facility?

■ Appellant first argues that the district court erred by not directly addressing whether the act of transporting an injured person from the scene of the accident to a hospital falls within the scope of Minnesota's Good Samaritan law.

Courts must first look to the language of the statute to determine its meaning and

"ascertain and effectuate the intent of the legislature." Minn.Stat. § 645.16 (2002). If the meaning of a statute is plain and unambiguous on its face, judicial construction is neither necessary nor proper. *Occhino v. Grover*, 640 N.W.2d 357, 359 (Minn.App.2002), *review denied* (Minn. May 28, 2002). But courts are not to give effect to the plain meaning of the statute if it produces absurd results or it is clearly at odds with the policy of the legislation as a whole. *Id.*

█ The words and phrases of a statute are to be construed according to the ordinary rules of grammar and according to their most natural and obvious usage, unless such a meaning would subvert the intent of the legislature. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 383 (Minn. 1999). Every law shall be construed to give effect to all its provisions. Minn.Stat. § 645.16. Whenever possible, no word or phrase will be deemed superfluous. *Amaral*, 598 N.W.2d at 384. A statute that has more than one reasonable interpretation is ambiguous, and the ambiguity will be resolved by looking to the intent of the legislature. *Occhino*, 640 N.W.2d at 360. The canons of construction also demand that substantive policy concerns and legislative intent be examined in order to determine the meaning of a statute. *Id.*

Minnesota's Good Samaritan law has two main components. The statute imposes a duty to help on anyone present "at the scene of an emergency" who "knows another person is exposed to or has suffered grave physical harm," provided that the person can lend assistance without danger or peril to themselves. Minn.Stat.

§ 604A.01, subd. 1 (2002). The second component of the statute, in dispute here, provides immunity to any person who:

> without compensation or the expectation of compensation, renders emergency care, advice, or assistance at the scene of an emergency or ***during transit*** to a location where professional medical care can be rendered, * * * unless the person acts in a willful and wanton or reckless manner in providing the care, advice, or assistance.

Minn.Stat. § 604A.01, subd. 2(a) (Emphasis added).

Appellant contends that the Good Samaritan law's "during transit" provision does not apply to the mere act of driving an injured party from the scene of an accident to a hospital. Instead appellant argues that the "during transit" provision only protects those who provide some sort of emergency care while the person is being transported to a health-care facility.

█ The purpose of the statute is to encourage laypersons to help those in need, even when they are under no legal obligation to do so, by providing immunity from liability claims arising out of an attempt to assist a person in peril. *Tiedeman by and Through Tiedeman v. Morgan*, 435 N.W.2d 86, 89 (Minn.App.1989), *review denied* (Minn. Mar. 24, 1989).[1] This is consistent with the acknowledged purpose underlying most Good Samaritan statutes, which is to provide protection to "individuals from civil liability for negligent acts or omissions committed while voluntarily providing emergency care." Danny R. Veilleux, Annotation, *Construc-*

---

1. *Tiedeman* gives a brief historical overview of the Minnesota's Good Samaritan law, noting that when it was first passed in 1971, it only contained the liability-protection provision. *Tiedeman by and Through Tiedeman v. Morgan,* 435 N.W.2d 86, 89 (Minn.App.1989).

The duty to assist language was added in 1984. *Id.* The *Tiedeman* court ultimately concluded that the Good Samaritan statute did not apply in that case because the defendants had a preexisting duty to assist the plaintiff. *Id.*

*tion and Application of "Good Samaritan" Statutes,* 68 A.L.R.4th 294, 299–300 (1989).

The issue of whether the Good Samaritan law applies to the simple act of providing transportation from the scene of an emergency to a place where medical care can be provided has not been addressed in Minnesota. A few foreign cases have addressed this topic. The Washington Court of Appeals specifically held that Washington State's Good Samaritan law encompasses transportation. *Youngblood v. Schireman,* 53 Wash.App. 95, 765 P.2d 1312, 1319 (1988). But the Washington statute specifically provides liability protection for a person who "renders emergency care at the scene of an emergency or who *participates in transporting.*" Wash. Rev.Code § 4.24.300 (2000) (emphasis added).

The Massachusetts Court of Appeals, analyzing Maine law, recently ruled that transporting another person did fall within the protection of Maine's Good Samaritan statute. *Campbell v. Schwartz,* 47 Mass. App.Ct. 360, 712 N.E.2d 1196 (1999). In *Campbell,* two would-be rescuers on snowmobiles went in search of an extremely intoxicated snowmobile driver stranded in 20–below–zero temperatures. *Id.* at 1197–98. After finding the stranded snowmobiler, the party headed back to camp. *Id.* at 1198. The plaintiff rode on the back of one of the would-be rescuer's snowmobile while the other rescuer followed behind. *Id.* The plaintiff fell into the snow, was run over by the trailing snowmobile, and died as a result of the injuries sustained during the accident. *Id. Campbell* concluded that because the rescuers went in search of a highly intoxicated, stranded snowmobiler and attempted to bring him to safety, they were protected by Maine's Good Samaritan statute. *Campbell,* 712 N.E.2d at 1198–1200. But the *Campbell* court noted that because Maine's law employed the

term "rescue" as opposed to "emergency care," it was more expansive in scope than most Good Samaritan statutes. *Id.* at 1200.

Conversely, in *Dahl v. Turner,* the New Mexico Court of Appeals held that New Mexico's Good Samaritan law did not cover the mere act of transporting a person from the scene of an accident to another location. *Dahl v. Turner,* 80 N.M. 564, 458 P.2d 816, 823–24 (Ct.App.1969). There are, however, stark differences between the present case and *Dahl.* In *Dahl,* the plaintiff's only injury was a cut on the arm, an injury less severe than the dislocated knee suffered by Swenson. *Dahl,* 458 P.2d at 823. Furthermore, the defendant in *Dahl* was not giving the accident victim a ride to a place where he could get medical attention. *Id,* at 824. In fact, the plaintiff in *Dahl* specifically did not want to see a doctor and asked to be taken to a nearby motel. *Id.* Here, Swenson, a minor, had more serious injuries, needed and wanted medical attention, and was ultimately headed for a hospital when this tragedy occurred.

The appellant asks us to conclude that the "during transit" language of the Good Samaritan statute does not cover the simple act of transporting an injured person to a hospital. Because statutes are to be construed as to give effect to every provision, before we can identify what acts are excluded from protection of the statute we must first determine the scope of the "during transit" provision. *See Amaral,* 598 N.W.2d at 384; Minn. Stat § 645.16.

■ Appellant suggests that the "during transit" provision protects acts of aid or assistance (other than the actual act of driving) given while transporting an injured person. In light of the fact that professional emergency medical technicians are already under a duty to provide competent care, appellant's interpretation

would only protect those laypersons providing emergency care in a vehicle and in transit to a health-care facility while a third person drives the vehicle. Such a narrow interpretation of the law offers little protection. Nor does it offer much encouragement to a layperson to help others in peril. Given this restrictive alternative, and because the purpose of the Good Samaritan law is to encourage non-emergency personnel to help those in peril, *see Tiedeman,* 435 N.W.2d at 90, there is no other way to interpret the "during transit" provision other than to conclude that it provides a liability shield to laypersons whose only act of assistance is to drive a person from the scene of an emergency to a health-care facility.

To hold, as appellant urges, that transportation is not a protected activity and not eligible for immunity under the provisions of the Good Samaritan law would have the perverse effect of discouraging an entire class of responses to emergency circumstances. Absent a clear legislative direction that transportation is not a covered activity under the immunity statute, we are not willing to adopt appellant's argument. We hold that transportation of an injured person by non-emergency personnel is a protected activity under the immunity provisions of the Good Samaritan law.

II. Is a layperson who provides transportation for an injured person to a health-care facility, where the transportation utilizes an indirect route, or a brief stop on the way to the facility acting at the scene of an emergency and protected from liability as provided by Minnesota's Good Samaritan law?

■ Appellant argues that even if transporting another from the scene of an accident falls within the scope of the Good Samaritan law, it offers Tiegs no protection because she did not face the statutorily required emergency. Minn.Stat. § 604A.01, subd. 2(a). Appellant argues that because Tiegs did not plan to go from the scene of the accident directly to a hospital, a true emergency did not exist. Instead, Tiegs planned to first drive nearly a quarter-mile back to her house where she would pick up the rest of Swenson's party after they had parked their snowmobiles. Additionally, appellant also implies that because Swenson did not suffer a life-threatening injury, an emergency did not exist.

An "emergency" has been broadly defined by the supreme court in other contexts "as 'any event or occasional combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency; * * * an unforeseen occurrence or condition.'" *Gust v. Minnesota Dep't. of Natural Resources,* 486 N.W.2d 7, 9 (Minn.App.1992) (quotation omitted). However, neither statute nor case law defines "emergency" in the context of the Good Samaritan law.

■ Coming upon a roadside personal-injury-accident scene is the epitome of an emergency. *Flynn v. U.S.,* 902 F.2d 1524, 1530 (10th Cir.1990) (holding that National Park Service employees who came upon the an accident just moments after it occurred, where an injured pedestrian was lying in the highway, were at an emergency scene as required by Utah's Good Samaritan law). Further, the protection of the Good Samaritan law is not lost if there is a reasonably brief delay in seeking medical care. *See Youngblood,* 765 P.2d at 1320. Similarly, an accident victim does not need to be suffering from a life-threatening injury in order for an emergency to exist. *Rivera v. Arana,* 322 Ill.App.3d 641, 255 Ill.Dec. 333, 749 N.E.2d 434, 442 (2001) (holding that a doctor who treated, at his office and without charge, a

boy who had ulcerated and infected feet was protected by Illinois' Good Samaritan law, because without treatment the boy's infection could have become worse). Tiegs came across an accident scene not long after the accident had occurred. She encountered an accident victim in a great deal of pain and in need of immediate medical assistance. We conclude that Swenson's circumstances easily qualify as an emergency scene.

■ The language of subdivision 2 of the Good Samaritan statute does not require grave or life-threatening injuries nor does the statute prohibit the use of an indirect route to the medical facility, such as occurred here. Further, other states, examining the scope of Good Samaritan statutes, typically have not required life-threatening injuries as a condition precedent to receiving immunity. *Arana*, 255 Ill.Dec. 333, 749 N.E.2d at 442. The only requirement is that a person render assistance at the scene of an emergency. An emergency is a scene where a combination of events which calls for "immediate action" it is not limited to the threat of grave physical harm. *Gust*, 486 N.W.2d at 9 (quotation omitted).

Appellant's parsing of the statute would require good samaritans to determine the severity of an injury before offering assistance. There is no indication that the legislature intended non-emergency personnel attempting to aid an injured party to make preliminary determinations as to the severity of the injury or the extent of the emergency before entitlement to immunity under the Good Samaritan law. Appellant's formulation also ignores the probability that less serious injuries, left untreated, may in time become more serious, a risk that would increase under the interpretation urged by appellant.

When Tiegs came upon the accident, she had no way of knowing the true extent of Swenson's injuries. Nor could she contact help. She was at the scene of an emergency: a situation calling for "immediate action or remedy; pressing necessity; exigency; * * * an unforeseen occurrence or condition." *See Gust*, 486 N.W.2d at 9 (quotation omitted). The de minimus delay occasioned by the planned indirect route to the hospital did nothing to lessen the nature of the emergency encountered by Tiegs.

## DECISION

Tiegs acted at the scene of an emergency and gave assistance to an injured person by attempting to transport an accident victim to a hospital. Her actions fall within Minn.Stat. § 604A.01, subd. 2 (2002), and, because there were no genuine issues of material fact and Tiegs was otherwise entitled to the immunity provisions of Minnesota's Good Samaritan law, we affirm the district court's grant of summary judgment.

**Affirmed.**