■ Donna McDaniel, Individually and as Parent and Guardian of Ethan McDaniel, an Infant, Appellant, v Nancy Keck et al., Respondents, et al., Defendant. (And Two Third-Party Actions.) [861 NYS2d 516]—

Lahtinen, J. Appeals (1) from an order of the Supreme Court (Coccoma, J.), entered February 5, 2007 in Delaware County, which granted a motion by defendant Bronxville Elementary School for summary judgment dismissing the complaint against it, and (2) from an order of said court, entered December 10, 2007 in Delaware County, which, among other things, granted defendant Nancy Keck's cross motion for summary judgment dismissing the complaint against her.

In February 2004, plaintiff's son (born in 1997 [hereinafter the child]) poked himself in the right eye with a wire while on the premises of third-party defendant, Manhattan Country School Farm, in the Town of Roxbury, Delaware County and, tragically, he ended up later losing the eye. Manhattan, which is a private school and working farm, was the employer of the child's parents, and the school permitted employees to bring their children to the farm. During certain times of the year, Manhattan allowed other schools to use its facilities and, at the time of the accident, defendant Bronxville Elementary School was using the facility. Bronxville had arranged for a local nurse, defendant Nancy Keck, to be on site to administer medications and provide basic first aid for Bronxville students.

The child was playing in a barn on the premises when the accident occurred and he sought out his father, John McDaniel, who had an office located near Keck. Because of her close proximity to McDaniel, Keck became aware that the child had injured his eye and, although he was not a Bronxville student, she volunteered to look at his eye. According to Keck, the child stated that he had hit himself with string (not wire), she did not observe any redness or swelling, she administered ice, she told the child's parents he would probably fall asleep and have a lack of appetite because he had been crying, and she further told them to see a physician if any problems developed. Other versions of the germane events were presented, including one by plaintiff in which Keck was aware from early on that a wire had struck the child's eye, the eye was red when first observed, Keck told plaintiff to treat the eye with ice, no mention was made by Keck of seeking further medical care, and Keck reassured plaintiff the following day that it was normal for the eye to be red and swollen.

The day after the accident, the child attended school, but dur-

ing the course of the day was taken to the school nurse because of his eye. Although the child recalled that the school nurse called his mother, plaintiff claimed not to remember such a telephone call. The following day (two days after the accident), during a regularly scheduled appointment for the child's sibling with a pediatrician, plaintiff asked the doctor to look at the child's eye. The pediatrician immediately sent him to an ophthalmologist, who found the eye infected and referred him to a specialist. Ultimately, following several surgeries, the child's right eye had to be removed.

Plaintiff commenced this action against, among others, Bronxville and Keck, and Bronxville brought a third-party action against Manhattan. Bronxville moved for summary judgment dismissing the complaint, which was granted by Supreme Court in February 2007 upon the ground that Keck was an independent contractor and not an employee of Bronxville. The third-party action was thus also dismissed. Keck subsequently cross-moved for summary judgment dismissing the complaint as to her and, in December 2007, Supreme Court granted the cross motion finding, among other things, that Keck's conduct was protected by the Good Samaritan law. Plaintiff appeals from both orders.

We turn first to whether the nursing Good Samaritan statute applies. That statute provides, in relevant part, that a nurse is liable only for acts or omissions constituting gross negligence when the nurse "voluntarily and without the expectation of monetary compensation renders first aid or emergency treatment at the scene of an accident or other emergency, outside a hospital, doctor's office or any other place having proper and necessary medical equipment, to a person who is unconscious, ill or injured" (Education Law § 6909 [1]). The statute further states that "[n]othing in this subdivision shall be deemed or construed to relieve a licensed registered professional nurse or licensed practical nurse from liability for damages for injuries or death caused by an act or omission on the part of such nurse while rendering professional services in the normal and ordinary course of her [or his] practice" (Education Law § 6909 [1]).

In addition to this statute covering nurses, New York has several similar statutes extending the gross negligence standard in certain emergency situations to various other professions (see Education Law § 6527 [2] [physicians]; §§ 6547 [physician's assistants], 6611 [6] [dentists]; § 6737 [physical therapists]), as well as to laypersons (see Public Health Law § 3000-a [1]). Indeed, some form of Good Samaritan legislation exists in all 50 states, although the scope of protection afforded varies consid-

erably among the jurisdictions (*see generally Velazquez ex rel. Velazquez v Jiminez*, 172 NJ 240, 250-251, 798 A2d 51, 57-58 [2002]). An overriding purpose of such statutes is to "encourage laypersons [and professionals] to help those in need, even when they are under no legal obligation to do so, by providing immunity from liability claims arising out of an attempt to assist a person in peril" (*Swenson v Waseca Mut. Ins. Co.*, 653 NW2d 794, 797 [Minn Ct App 2002]; *see Mueller v McMillian Warner Ins. Co.*, 290 Wis 2d 571, 584, 714 NW2d 183, 189 [2006]; *Velazquez ex rel. Velazquez v Jiminez*, 172 NJ at 250, 798 A2d at 57; *see generally* Danny R. Veilleux, Annotation, *Construction and Application of "Good Samaritan" Statutes*, 68 ALR4th 294).

Here, Keck was under no duty to render assistance to the child. She was at the premises to provide nursing services exclusively to Bronxville students, of which the child was not one. She volunteered to help with the child and she had no expectation of monetary compensation for such assistance. While her examination of the child occurred in the farmhouse and not the barn where the accident occurred, the farmhouse is where the child presented himself in distress immediately after the injury and, under the circumstances, this was sufficiently close in time and proximity to fall within the statutory meaning of being at the scene of an accident or emergency (*cf. Mueller v McMillian Warner Ins. Co.*, 290 Wis 2d at 577, 714 NW2d at 186). New York is among the states that explicitly exclude care within a hospital, doctor's office, or "other place having proper and necessary medical equipment" from falling within the scope of statutory immunity (Education Law § 6909 [1]; *see S'Doia v Dhabhar*, 261 AD2d 968, 968 [1999]; *see generally Velazquez ex rel. Velazquez v Jiminez*, 172 NJ at 251, 798 A2d at 58). That statutory exclusion does not apply to this case since Keck was located in a room in a farmhouse with no medical equipment or supplies other than a first-aid kit (which reportedly included only limited items such as bandages and over-the-counter ointment for cuts or bruises) supplied by Bronxville for the bus trip to the farm and a similar first-aid kit (with bandages and peroxide) that Manhattan had available. Keck's examination of the child falls within the general purpose of the Good Samaritan law and each of the specific statutory criteria applicable to a nurse providing treatment in this state was established. There is no contention of gross negligence and, accordingly, we conclude that Supreme Court properly granted summary judgment to Keck.

Since the claim against Bronxville rests upon purported vicarious liability for acts of Keck, it follows that the dismissal as to

Keck requires that the granting of summary judgment to Bronxville also be affirmed, and it is not necessary to address the nature of the relationship between Keck and Bronxville. The remaining issues are academic.

Mercure, J.P., Rose, Kavanagh and Stein, JJ., concur. Ordered that the orders are affirmed, with one bill of costs.