[937 NYS2d 63]

Gregory C. Miglino, Jr., Respondent, v Bally Total Fitness of Greater New York, Inc., et al., Appellants.

Second Department, December 27, 2011

APPEARANCES OF COUNSEL

*Morrison Mahoney, LLP*, New York City (*Demi Sophocleous* of counsel), for appellants.

*Scott E. Charnas*, New York City, and *John V. Decolator*, Garden City, for respondent.

## OPINION OF THE COURT

SGROI, J.

On this appeal we consider whether General Business Law § 627-a, which mandates that certain health clubs in the State of New York provide an automated external defibrillator device, as well as a person trained in its use, also imposes an affirmative duty of care upon the facility so as to give rise to a cognizable statutory cause of action in negligence for failure to use the device. We conclude that such a cause of action is cognizable. We also conclude that the plaintiff stated a cause of action to recover damages for common-law negligence against the defendant Bally Total Fitness of Greater New York, Inc. (hereinafter Bally).

At around 7:00 A.M. on March 26, 2007, Gregory Miglino, Sr. (hereinafter the decedent) was playing racquetball at a club located in Lake Grove (hereinafter the gym), owned and operated by Bally, when he suddenly collapsed. According to an affidavit submitted by Kenneth LaGrega, a Bally employee working at the gym that morning, "a gym member informed the front desk" that the decedent had collapsed and a 911 emergency call was then immediately placed. According to the affidavit, LaGrega was a personal trainer who had also completed a course in the operation of automated external defibrillator (hereinafter AED) devices, and had obtained a certification of completion of a course in the training of cardiopulmonary resuscitation provided by the American Heart Association. LaGrega's affidavit further stated:

> "I ran to assess the situation [and] [w]hen I arrived at the scene, I observed the decedent lying on his back with his eyes open, breathing heavily and with normal color. I checked for and found a faint pulse at that time.

"When I later returned to the scene, [another employee] was on the scene and had brought the club's AED to the decedent's side. Additionally, a medical doctor and medical student were attending to the decedent."

The report of the ambulance crew that responded to the 911 call stated, inter alia, that the emergency call was received at 6:59 A.M., the emergency medical services crew arrived at the gym at 7:07 A.M., and the ambulance arrived at Stony Brook Hospital at 7:45 A.M. The report further indicated that the decedent was "unconscious and unresponsive . . . on arrival [and] fine V-fib shocked." The decedent could not be revived and he was pronounced dead after arriving at the hospital.

In early 2008 the plaintiff, Gregory C. Miglino, Jr., as executor of the decedent's estate, commenced an action against Bally and Bally Total Fitness Corporation seeking, inter alia, to recover damages for negligence. The complaint alleged two causes of action, one against each defendant. Each cause of action sounded in negligence and was based upon the defendants' failure to use an AED on the decedent. The complaint alleged, in part, as follows:

"[On the date of the incident Bally] was required by New York State statute to have in attendance at the club at all times during business hours, at least one employee . . . who held a valid certification of completion of a course in the study of the operation of AED's and a valid certification of completion of a course in the study of cardiopulmonary resuscitation provided by a nationally recognized organization . . .

"[Bally] negligently failed to use the AED on plaintiff's decedent and/or failed to use said AED within sufficient time to save his life, and was otherwise negligent in regard to its failure to employ or properly employ life-saving measures regarding plaintiff's decedent."

Before any discovery had taken place, the defendants moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action. The defendants argued that the branch of the motion which was to dismiss the complaint insofar as asserted against Bally Total Fitness Corporation should be granted because it had no ownership or management interest in the gym. The defendants further argued that the branch of the

motion which was to dismiss the complaint insofar as asserted against Bally should be granted because it was

> "immune from liability arising out of the lack of success of emergency response efforts by virtue of . . . Public Health Law § 3000-a [which provides] that a person who voluntarily renders emergency treatment outside [of] a hospital or other location is not liable for injuries to or death of the person receiving the emergency treatment."

The defendants further argued that Bally's employees had no affirmative duty to use the available AED upon the decedent after he collapsed.

In opposition, the plaintiff argued, inter alia, that the gym was required, by statute, to have an AED on its premises, and a person trained to use such device, and that Bally could not rely upon the Good Samaritan statutes (General Business Law § 627-a [3]; Public Health Law § 3000-a) to insulate itself from liability. The plaintiff did not oppose that branch of the motion which was to dismiss the complaint insofar as asserted against Bally Total Fitness Corporation, and conceded that "[said] entity apparently does not own, operate or manage the [gym]."

The Supreme Court denied the defendants' motion, stating simply that "the pleadings . . . maintain causes of action cognizable at law." This appeal by the defendants ensued.

We begin our analysis with a summary of the statutes relevant to the issues raised herein.

> "[General Business Law] § 627-a. Automated external defibrillator requirements
>
> "1. Every health club [with more than 500 members] shall have . . . at least one [AED] and shall have in attendance, at all times during staffed business hours, at least one individual performing employment . . . who holds a valid certification of completion of a course in the study of the operation of AEDs and a valid certification of the completion of a course in the training of cardiopulmonary resuscitation provided by a nationally recognized organization or association.
>
> "2. Health clubs and staff[s] pursuant to subdivision one of this section shall be deemed a 'public access defibrillation provider' as defined in [Public

Health Law § 3000-b (1) (c)] and shall be subject to the requirements and limitation[s] of such section.

"3. Pursuant to [Public Health Law §§ 3000-a and 3000-b], any public access defibrillation provider, or any employee . . . of the provider who, in accordance with . . . this section, voluntarily and without expectation of monetary compensation renders emergency medical or first aid treatment using an AED which has been made available pursuant to this section, to a person who is unconscious, ill or injured, shall be liable only pursuant to [Public Health Law § 3000-a]."

"[Public Health Law] § 3000-a. Emergency medical treatment

"1. . . . [A]ny person who voluntarily and without expectation of monetary compensation renders first aid or emergency treatment . . . outside a hospital, doctor's office or any other place having proper and necessary medical equipment, to a person who is unconscious, ill, or injured, shall not be liable for damages . . . for the death of such person alleged to have occurred by reason of an act or omission in the rendering of such emergency treatment unless it is established that such injuries [or death] was caused by gross negligence on the part of such person . . .

"2. (i) Any [entity that makes available an AED as required by law], or (ii) an emergency health care provider under a collaborative agreement pursuant to [Public Health Law § 3000-b] with respect to an [AED] . . . shall not be liable for damages arising either from the use of that equipment by a person who voluntarily and without expectation of monetary compensation renders first aid or emergency treatment at the scene of . . . [a] medical emergency . . . ; provided that this subdivision shall not limit the person's or entity's . . . or the emergency health care provider's liability for his, her or its own negligence, gross negligence or intentional misconduct."

"[Public Health Law] § 3000-b. Automated external defibrillators

"1. Definitions . . .

"(b) 'Emergency health care provider' means (i) a physician . . . or (ii) a hospital . . .

"(c) 'Public access defibrillation provider' means a person . . . or other entity possessing or operating an [AED] pursuant to a collaborative agreement under this section . . .

"2. Collaborative agreement. A person . . . or other entity may purchase, acquire, possess and operate an [AED] pursuant to a collaborative agreement with an emergency health care provider. The collaborative agreement shall include a written agreement and written practice protocols, and policies and procedures that shall assure compliance with this section. The public access defibrillation provider shall file a copy of the collaborative agreement with the department and with the appropriate regional council prior to operating the [AED].

"3. Possession and operation of [AED] . . .

"(a) No person may operate an [AED without proper training]. However, this section shall not prohibit operation of an [AED] . . . (iii) by a person who operates the [AED] other than as part of or incidental to his employment or regular duties, who is acting in good faith, with reasonable care, and without expectation of monetary compensation, to provide first aid that includes operation of an [AED]; nor shall this section limit any good samaritan protections provided in section [3000-a] of this article."

This Court has not previously interpreted any of these statutes under circumstances such as those presented by this case. The only other Appellate Division case which has addressed similar factual circumstances is *Digiulio v Gran, Inc.* (74 AD3d 450 [2010], *affd* 17 NY3d 765 [2011]), wherein the plaintiff's decedent suffered an apparent heart attack while exercising at a health club facility. In the *Digiulio* case, the plaintiff commenced an action against the health club owner and then moved for partial summary judgment on the issue of liability based on common-law negligence, or pursuant to a theory of negligence per se based upon an alleged violation of General Business Law § 627-a. The defendants opposed the motion and cross-moved for summary judgment dismissing the complaint. The Supreme Court denied the plaintiff's motion

and granted the defendants' motion. On appeal, the Appellate Division, First Department, affirmed, stating, in part:

> "We agree with the motion court that plaintiff has not established a common-law negligence claim . . . After the heart attack, the club's employees more than fulfilled their duty of care by immediately calling 911 and performing CPR, had no common-law duty to use the AED, and could not be held liable for not using it . . .
>
> "Turning to the statutory claim, we reject plaintiff's argument that General Business Law § 627-a implicitly obligated the club to use its AED to treat [the decedent]. While the statute explicitly requires health clubs to have AEDs and people trained to operate them on their premises, it is silent as to the clubs' duty, if any, to use the devices" (*Digiulio v Gran, Inc.*, 74 AD3d at 452-453).

While the *Digiulio* case involved a motion for summary judgment, the First Department's reasoning suggests that there is no viable cause of action against a health club based upon the failure to use an available AED.

■ Thereafter, the plaintiff in *Digiulio* was granted leave to appeal to the Court of Appeals. In a decision dated June 14, 2011, the Court decided as follows:

> "Assuming arguendo that General Business Law § 627-a implicitly created a duty for defendants to use the [AED] the section required them to provide at their facility, plaintiff cannot recover because she failed to raise a triable issue of fact demonstrating that defendants' or their employees' failure to access the AED was grossly negligent (*see* General Business Law § 627-a [3]; Public Health Law § 3000-a). Defendants also did not breach any common-law duty to render aid to the decedent" (*DiGiulio v Gran, Inc.*, 17 NY3d 765, 767 [2011]).

The Court of Appeals left open the question of whether General Business Law § 627-a creates a duty upon a health club to use the AED which it is required to provide. We conclude that there is such a duty.

The risk of heart attacks following strenuous exercise is well recognized, and it has also been documented that the use of AED devices in such instances can be particularly effective if defibrillation is administered in the first few minutes after the cardiac episode commences (*see e.g.* Balady, Chaitman, Foster,

Froelicher, Gordon and Van Camp, *Automated External Defibrillators in Health/Fitness Facilities*, Circulation Journal of American Heart Association [2002], available at http://circ.ahajournals.org/content/105/9/1147; Senate Introducer Mem in Support, Bill Jacket, L 1998, ch 552, at 4 ["Sudden cardiac arrest is a major unresolved health problem. Each year, it strikes more than 350,000 Americans—nearly 1,000 per day. More than 95% of these people die because life-saving defibrillators arrive on the scene too late, if at all. The American Heart Association estimates that close to 100,000 deaths nationwide could be prevented each year if automated external defibrillators . . . were more widely distributed."]). It is also clear that the legislative intent behind General Business Law § 627-a was to make AED devices readily available for use in gyms. Indeed, the 2004 legislative memorandum in support of General Business Law § 627-a states the following as "[j]ustification" for the statute:

> "This [bill] would ensure a higher level of safety for thousands of individuals who belong to health clubs.
>
> "According to the American Heart Association, 250,000 Americans die every year due to sudden cardiac arrest. A quarter of these deaths could be avoided [i]f an [AED] is on hand for immediate use a[t] the time of emergency . . .
>
> "Because health clubs are places where individuals raise their heart rates through physical exercise, the chance of cardiac arrest [i]ncreases. Having an AED on hand could save lives" (Assembly Mem in Support, Bill Jacket, L 2004, ch 186, at 4).

Accordingly, the laudatory purpose of the statute was to increase the number of lives that could be saved through the use of available AED devices at health club facilities. Although the statute does not contain any provision that specifically imposes an affirmative duty upon the facility to make use of its required AEDs, it also does not contain any provision stating that there is no duty to act (*cf.* Public Health Law § 1352-b [which provides for the mandatory posting in public eating establishments of instructions to aid in choking emergencies, but also contains a provision entitled "(n)o duty to act"]). Moreover, it is illogical to conclude that no such duty exists. We are aware that " 'legislative enactments in derogation of [the] common law, and especially those creating liability where none previously existed,' must be strictly construed" (*Vucetovic v Epsom Downs, Inc.*, 10

NY3d 517, 521 [2008], quoting *Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.*, 3 NY3d 200, 206 [2004]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 301 [c]). Nevertheless, such strict construction should not be utilized to eviscerate the very purpose for which the legislation was enacted. "A court should avoid a statutory interpretation rendering the provision meaningless or defeating its apparent purpose" (*State of New York v Cities Serv. Co.*, 180 AD2d 940, 942 [1992]; *see Matter of Industrial Commr. of State of N.Y. v Five Corners Tavern*, 47 NY2d 639, 646-647 [1979]; *see also Zappone v Home Ins. Co.*, 55 NY2d 131, 137 [1982]; McKinney's Cons Laws of NY, Book 1, Statutes § 145). "It is the spirit[, the object,] and purpose of the statute which are to be regarded in its interpretation" (*Westchester County Socy. for Prevention of Cruelty to Animals v Mengel*, 266 App Div 151, 154-155, *affd* 292 NY 121 [1944]).

Applying these principles, and inasmuch as there is no dispute that General Business Law § 627-a requires certain health club facilities to provide an AED on the premises, as well as a person trained to use such device, it is anomalous to conclude that there is no duty to use the device should the need arise. Stated differently, why statutorily mandate a health club facility to provide the device if there is no concomitant requirement to use it? This conclusion is further buttressed by the fact that the Legislature deemed it appropriate to partially immunize the health clubs from liability, which may arise from their use of the AED, by including language within General Business Law § 627-a that referenced the "Good Samaritan" provisions of the Public Health Law (*see* General Business Law § 627-a [3]; Public Health Law § 3000-a). Such "protection" could be considered superfluous if the statute did not also impose a duty upon the health clubs to use, or attempt to make use of, the device, depending upon the circumstances of the particular medical emergency. In addition, pursuant to General Business Law § 627-a, as defined by Public Health Law § 3000-b (1) (b), (c) and (2), the gym was a "public access defibrillation provider" and, thus, was required to have in place a "collaborative agreement" with an emergency health care provider (i.e., cardiac emergency doctor or hospital providing emergency care) (Public Health Law §§ 3000-a, 3000-b). Again, the requirement of such an agreement could be viewed as unnecessary if there were no obligation upon the health club facility to attempt to use the AED if the circumstances warranted such use.

In the case at bar, it is undisputed that, at the time the decedent collapsed, the gym had an available AED on its premises and there was an employee present who had been trained in the use of the device. Indeed, it was this individual, LaGrega, who initially responded to the decedent. LaGrega also stated in his affidavit that "the club's AED [had been brought] to the decedent's side." However, for reasons that are not entirely clear, the gym's AED device was never used on the decedent. LaGrega's affidavit suggests that he perhaps deferred to the medical doctor who responded to the internal announcement which had been made in the gym, seeking the assistance of anyone with medical training. Hence, it may be that the doctor decided that the AED was contraindicated. However, based upon the record before us, such a conclusion would amount to mere speculation.

■ In any event, unlike the procedural posture of *Digiulio v Gran, Inc.* (74 AD3d 450 [2010]), which involved motions for summary judgment, the defendants herein seek dismissal for failure to state a cause of action pursuant to CPLR 3211 (a) (7). In determining a motion for failure to state a cause of action, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *see Nonnon v City of New York*, 9 NY3d 825 [2007]). "Whether [the] plaintiff can ultimately establish [his] allegations is not part of the calculus in determining a motion to dismiss [made pursuant to CPLR 3211 (a) (7)]" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]; *see Ginsburg Dev. Cos., LLC v Carbone*, 85 AD3d 1110 [2011]). Accordingly, in light of the facts as alleged by the plaintiff, coupled with our conclusion that General Business Law § 627-a imposes an inherent duty to make use of the statutorily required AED, we conclude that the complaint states a cognizable cause of action to recover damages based upon Bally's failure to use its AED upon the decedent.

■ To the extent that the defendants argue that the complaint should have been dismissed insofar as asserted against Bally because it is immune from liability under the Good Samaritan provisions of General Business Law § 627-a, that argument is misplaced. The issue at bar is not whether Bally was negligent in the course of its use of the AED. Instead, as set forth in the beginning of this opinion, our focus is whether General Busi-

ness Law § 627-a gives rise to a statutory cause of action sounding in negligence based upon the failure to use the device. While General Business Law § 627-a does incorporate the provision of the Good Samaritan law requiring a showing of gross negligence when the statutorily required AED is used, where, as here, the cause of action is based on the failure to employ the device, as opposed to the manner in which it was employed, the gross negligence standard is not applicable.

■ In addition, the defendants were not entitled to dismissal of the complaint insofar as asserted against Bally for failure to state a cause of action based solely upon common-law negligence. It is settled that a duty of reasonable care owed by a tortfeasor to a plaintiff is elemental to any recovery in negligence (*see Pulka v Edelman*, 40 NY2d 781, 782 [1976]; *Palsgraf v Long Is. R.R. Co.*, 248 NY 339, 344 [1928]). To prove a prima facie case of negligence, a plaintiff must demonstrate the existence of a duty of care owed to the plaintiff, a breach of that duty, and that the breach of such duty was a proximate cause of his or her injuries (*see Pulka v Edelman*, 40 NY2d 781 [1976]; *Gordon v Muchnick*, 180 AD2d 715 [1992]; *see also Akins v Glens Falls City School Dist.*, 53 NY2d 325, 333 [1981]). Absent a duty of care, there is no breach, and without a breach, there can be no liability (*see Pulka v Edelman*, 40 NY2d 781 [1976]; *Gordon v Muchnick*, 180 AD2d 715 [1992]). In addition, foreseeability of an injury does not determine the existence of duty (*see Strauss v Belle Realty Co.*, 65 NY2d 399, 402 [1985]; *Pulka v Edelman*, 40 NY2d 781 [1976]). However, "[u]nlike foreseeability and causation, both generally factual issues to be resolved on a case-by-case basis by the fact finder, the duty owed by one member of society to another is a legal issue for the courts" (*Eiseman v State of New York*, 70 NY2d 175, 187, citing *De Angelis v Lutheran Med. Ctr.*, 58 NY2d 1053, 1055 [1983]).

Therefore, the question is whether Bally owed any duty to the decedent. Generally speaking, one does not owe a duty to come to the aid of a person in peril, whether the peril is medical or otherwise (*see McDaniel v Keck*, 53 AD3d 869, 872 [2008]; *Walsh v Town of Cheektowaga*, 237 AD2d 947 [1997]; *see also Plutner v Silver Assoc., Inc.*, 186 Misc 1025 [1946]; *Chappill v Bally Total Fitness Corp.*, 2011 NY Slip Op 30146[U] [2011]). However, " 'one who assumes a duty to act, even though gratuitously, may thereby become subject to the duty of acting carefully' " (*Mirza v Metropolitan Life Ins. Co.*, 2 AD3d 808, 809 [2003], quoting *Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 522 [1980]).

In the case at bar, LaGrega assumed a duty by coming to the decedent's assistance. By his own admission, LaGrega directed that a 911 emergency call be made, sought medical assistance within the club, and took the decedent's pulse. However, he did not make use of the available AED, even though the device had been brought to the decedent's side. It could be argued that since LaGrega was trained in the use of the AED, his failure to use the device was tantamount to not acting carefully. On the other hand, it may ultimately be proven that LaGrega acted reasonably under the circumstances, and that no liability can attach to the defendants for the decedent's death. These are questions which cannot be resolved at this procedural juncture. Moreover, as noted in our above discussion regarding the statutory duty under General Business Law § 627-a, the issue of whether the plaintiff can ultimately prove his factual allegations also does not figure into the determination of whether the common-law negligence claim should be dismissed for failure to state a cause of action. Accordingly, we conclude that the separate cause of action based upon common-law negligence was not subject to dismissal for failure to state a cause of action (*see* CPLR 3211 [a] [7]; *Leon v Martinez*, 84 NY2d 83 [1994]). Therefore, the Supreme Court properly denied that branch of the defendants' motion pursuant to CPLR 3211 (a) (7) which was to dismiss the complaint for failure to state a cause of action insofar as asserted against Bally.

As indicated, the plaintiff did not oppose that branch of the motion which was to dismiss the complaint insofar as asserted against the defendant Bally Total Fitness Corporation and, in fact, conceded that "[said] entity apparently does not own, operate or manage the subject health club." Moreover, even on appeal, the plaintiff does not dispute the contention by Bally Total Fitness Corporation that it was entitled to dismissal of the complaint insofar as asserted against it. Accordingly, that branch of the motion which was to dismiss the complaint insofar as asserted against that defendant should have been granted.

The order is modified, on the law and the facts, by deleting the provision thereof denying that branch of the defendants' motion pursuant to CPLR 3211 (a) (7) which was to dismiss the complaint insofar as asserted against Bally Total Fitness Corporation, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed.

SKELOS, J.P., LEVENTHAL and AUSTIN, JJ., concur.

Ordered that the order is modified, on the law and the facts, by deleting the provision thereof denying that branch of the de-

fendants' motion pursuant to CPLR 3211 (a) (7) which was to dismiss the complaint insofar as asserted against Bally Total Fitness Corporation, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed, without costs or disbursements.