[888 NYS2d 368]

LOUISE DIGIULIO, Individually and as Executrix of ALBERT DI-GIULIO, Deceased, Plaintiff, v GRAN, INC., Doing Business as NEW YORK HEALTH & RACQUET CLUB, et al., Defendants.

Supreme Court, New York County, October 13, 2009

APPEARANCES OF COUNSEL

*Decolator, Cohen & DiPrisco, LLP,* Garden City, for plaintiff.
*Morgan Melhuish Abrutyn,* Manhattan, for defendants.

## OPINION OF THE COURT

MARYLIN G. DIAMOND, J.

Background

On the early morning of February 21, 2006, Mr. DiGiulio was working out on a treadmill at a branch of the New York Health and Racquet Club located on Whitehall Street in Manhattan when he suddenly fell off the machine and collapsed to the floor. Another member of the club ran down a flight of steps to the lobby and notified the club's assistant manager, Terrance James. Mr. James immediately called 911 and ran up to assist Mr. DiGiulio. Another employee of the club, Bernard Ang, arrived and immediately began performing CPR. According to a report prepared by the defendants, Mr. Ang started performing CPR within two to three minutes after Mr. DiGiulio was stricken. Approximately five minutes later, paramedics arrived and began using their defibrillator on Mr. DiGiulio, whose pulse was eventually restored. He was then removed to New York Downtown Hospital where he was admitted from February 21, 2006 to April 3, 2006. He was later transferred to a hospital in New Jersey where he remained until his death on June 14, 2006.

Although Mr. James was trained in the use of a defibrillator, he failed to utilize the defibrillator which the club kept inside a glass enclosed cabinet that was mounted on the wall about 20 yards from where Mr. DiGiulio was stricken. At his deposition, Mr. James testified that he did not attempt to access the defibrillator because the cabinet had a lock on it and he did not have

the key. Mr. James admitted that he never tried to open the cabinet or break the glass in order to access the defibrillator. Instead, he went downstairs and searched unsuccessfully for a key to the cabinet. In fact, unbeknownst to Mr. James, the defibrillator cabinet was never actually locked.

In this action, the plaintiff argues that as a result of the failure of the club's employees to use the defibrillator immediately after Mr. DiGiulio collapsed, his condition deteriorated over the course of a few minutes to the extent that he ultimately died. The plaintiff contends that Mr. James was negligent in not even attempting to open the cabinet and/or break the glass and that his negligence can be imputed to the club. The plaintiff also argues that the club itself was negligent in failing to make the defibrillator easily accessible and/or failing to advise its employees that the cabinet housing the defibrillator was not locked. In addition to asserting a claim under common-law negligence, the plaintiff also claims that the defendant club violated General Business Law § 627-a (1), which requires that every health club with 500 or more members maintain on the premises at least one defibrillator and an employee trained and certified in its proper use. Finally, the plaintiff argues that defendant's negligence was a proximate cause of Mr. DiGiulio's pain and suffering, and subsequent death.

Discussion

In her motion papers, the plaintiff argues that the club had a common-law duty to act reasonably towards the decedent and that it breached that duty by failing to properly utilize the defibrillator that was on the premises. Specifically, the plaintiff faults the club for (1) failing to properly train or provide information to its employees about the use of the defibrillator, (2) the negligent response of its employees to Mr. DiGiulio's cardiac arrest and (3) its failure to notify its employees that the defibrillator could be accessed without the use of a key. The defendant club, however, argues that it had no duty under the common law to utilize a defibrillator because, by voluntarily engaging in the activity of exercising on a treadmill, Mr. DiGiulio assumed the risk that he might suffer cardiac arrest. The court agrees.

It is well settled that by engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation. (*See Morgan v State of New York*, 90 NY2d 471, 484 [1997].) Generally, an owner or operator of an athletic facility only has a duty to

exercise reasonable care to protect participants from unassumed, concealed or unreasonably increased risks. (*See Rutnik v Colonie Ctr. Ct. Club*, 249 AD2d 873, 874 [3d Dept 1998].) In this respect, the courts in this state have held that the risk of cardiac failure is inherent when participating in intense sporting activity or exercise. (*See Rutnik v Colonie Ctr. Ct. Club*, 249 AD2d at 875; *see also Colon v Chelsea Piers Mgt., Inc.*, 50 AD3d 616, 617 [2d Dept 2008]; *Putrino v Buffalo Athletic Club*, 193 AD2d 1127, 1128 [4th Dept 1993].) Here, it is undisputed that Mr. DiGiulio was a patron of the club who regularly exercised on the treadmill. He should thus be held to have assumed the inherent risk of suffering cardiac arrest from that activity. As the defendant correctly asserts, it and/or its employees could have fulfilled their duty under the common law by simply calling 911. In fact, the club's employees went beyond that obligation and performed CPR until the emergency workers arrived. Since the club was not under any duty at common law to use a defibrillator, it cannot be held liable for its failure to do so. (*See Colon v Chelsea Piers Mgt.*, 50 AD3d at 617; *Rutnik v Colonie Ctr. Ct. Club*, 249 AD2d at 874.)

The plaintiff nevertheless argues that even if the defendant had no duty to Mr. DiGiulio or any other club member, once Mr. James assumed the duty to obtain and utilize a defibrillator, he was obligated to act in a reasonable manner. This argument is without merit. It is generally true, as the plaintiff suggests, that one who, being under no duty to do so, voluntarily takes charge of a person in a position of peril is subject to liability to that person for any bodily harm caused by the failure of the actor to exercise reasonable care to secure the safety of that person. (*See Mirza v Metropolitan Life Ins. Co.*, 2 AD3d 808, 809 [2d Dept 2003]; *Thrane v Haney*, 264 AD2d 926, 927 [3d Dept 1999].) However, the actor can only be held liable for discontinuing his aid or protection if, by so doing, he leaves the other person in a worse position than when the actor took charge. (*See Parvi v City of Kingston*, 41 NY2d 553, 559 [1977].) Here, neither the club nor Mr. James placed the decedent in any more of a vulnerable position than he would have been in had Mr. James not even attempted to gain access to the defibrillator.

The plaintiff also argues that the club is liable because it violated General Business Law § 627-a (1), which requires health clubs with 500 or more members to have at least one external defibrillator on the premises, as well as at least one person trained to use it. The club, which has 3,000 members, is

clearly bound to comply with this requirement. In this respect, the club argues that it did, in fact, comply since a defibrillator was present on the premises and accessible at the time of the decedent's collapse. The court agrees.

█ It is true, as the plaintiff suggests, that the mere fact that a defibrillator is on the premises does not satisfy General Business Law § 627-a (1) if the machine is not otherwise available to assist a patron who suffers a heart attack. Clearly, if the defibrillator had been inaccessible because it had been placed in a remote location or in a locked cabinet with no key available, the presence of the machine would be meaningless and the statute could reasonably be construed as having been violated. Here, however, the machine was located nearby in an unlocked cabinet. The only reason the machine was not used was because an employee did not think to even attempt to open the cabinet. The court does not construe General Business Law § 627-a (1) as imposing liability on a health club which, in compliance with the statute, maintains an accessible defibrillator on the premises, but whose employee exercises poor judgment in attempting to access or use it. Indeed, there is nothing in the statute which suggests that the principles applicable under common-law negligence should be extended so as to make a health club liable for an employee's negligence in using, or attempting to use, an available defibrillator.

The court is therefore persuaded that the complaint is without merit and must be dismissed.

Accordingly, in motion sequence No. 001, the plaintiff's motion for summary judgment is denied. In motion sequence No. 002, the defendants' motion for summary judgment is granted and the complaint is hereby dismissed.