■ LOUISE DIGIULIO, Individually and as Executrix of ALBERT DIGIULIO, Deceased, Appellant, v GRAN, INC., Doing Business as NEW YORK HEALTH & RACQUET CLUB, et al., Respondents. (And a Third-Party Action.) [903 NYS2d 359]—

Order, Supreme Court, New York County (Marylin G. Diamond, J.), entered October 19, 2009, which denied plaintiff's motion for partial summary judgment on the issue of liability and granted defendants' cross motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

This appeal concerns the duty of a health club when faced with a stricken patron. The relevant facts in this personal injury action are largely undisputed. At about 6:22 A.M. on the morning of February 21, 2006, plaintiff's decedent, Albert Digiulio, suffered a heart attack while running on a treadmill at a health club that defendants owned and operated. Digiulio, age 52, was a longtime club member who frequently exercised on its treadmills. After Digiulio fell off the treadmill and collapsed on the floor, another patron ran down a flight of stairs to the lobby and alerted the club's assistant manager, Terrance James, who immediately called 911 and ran upstairs. Another club employee,

Bernard Ang, came to Digiulio's aid at the same time and immediately began performing cardiopulmonary resuscitation (CPR) on him.

While Ang was performing CPR, James, who was trained to operate automated external defibrillators (AEDs),* went to an AED stored in a glass cabinet hung on a nearby wall. The cabinet had a visible key lock mechanism, but was unlocked. Instead of trying to open the cabinet, James, who admittedly was panicked, assumed it was locked and, not knowing where the key was, ran back downstairs to the club offices and searched for it in various places. He abandoned his search when emergency medical services (EMS) personnel arrived at the scene.

An EMS pre-hospital care report of the incident stated that EMS personnel arrived at 6:29 A.M. and found Digiulio "in full cardiac arrest." While EMS personnel were administering CPR, more personnel arrived, placed Digiulio on a monitor, and delivered shocks with their own AED starting at 6:31 A.M. Digiulio's heartbeat was restored and he was taken to a hospital. Digiulio, who had suffered anoxic brain damage while stricken, remained hospitalized from February 21 until his death on June 14, 2006.

In April 2006, Digiulio and his wife commenced this action alleging claims for negligence and loss of consortium. Following discovery, plaintiff moved for partial summary judgment on the issue of defendants' liability under theories of common-law negligence and negligence per se for violation of General Business Law § 627-a, which required the club to keep an AED on premises along with a person trained to use it. Plaintiff claimed that the decedent should have been treated with the club's AED in the minutes before the EMS personnel arrived, and if James had used the AED when he first intended, her husband "almost certainly" would have survived his heart attack and "most likely" would have suffered no more than minor brain damage.

With respect to negligence, plaintiff claimed that since the club had an AED on the premises, it was "unreasonable" not to use it on the decedent. Plaintiff further claimed that the club was grossly negligent in failing to inform its employees that the wall cabinet was unlocked, and it was negligent for the club's employees to treat the stricken client with CPR instead of the AED. Plaintiff further contended that James was negligent in not trying to open the unlocked case before searching for a key, and the club was liable for its employee's negligence under a theory of respondeat superior.

---

* An AED delivers a shock to the heart of a cardiac arrest victim that can eliminate an abnormal "ventricular fibrillation" rhythm, which often causes arrest, and allow a normal heart rhythm to resume.

Plaintiff also claimed that defendants violated General Business Law § 627-a (1), which, in relevant part, provides that every health club with 500 or more members (as is the case here) "shall have on the premises at least one [AED] and shall have in attendance, at all times during business hours, at least one individual performing employment or individual acting as an authorized volunteer who holds a valid certification of completion of a course in the study of the operation of AEDs and a valid certification of the completion of a course in the training of [CPR] provided by a nationally recognized organization or association." Plaintiff acknowledged that the club "literally" complied with the statute by having the AED and a certified employee on premises, but argued that the statute imposed a duty to make the AED available and to use it when necessary.

Defendants, in opposition, argued that the decedent had voluntarily assumed the inherent medical risks of intense exercise, including the risk of cardiac failure. Defendants further contended that their employees had acted reasonably under the circumstances by calling 911 and administering CPR, and that they had no common-law duty to use an AED on the decedent. Finally, defendants argued that they had fully complied with section 627-a and that the statute does not impose a duty on health club employees to use AEDs at any particular time.

In denying the motion and granting the cross motion, the court found that no common-law duty to the decedent had been breached, and that the club had complied with section 627-a by storing the AED in an unlocked case in an accessible location on the premises.

We agree with the motion court that plaintiff has not established a common-law negligence claim. The decedent, in regularly using the club's treadmills, assumed the inherent risk of a heart attack that attends intense exercise (see *Rutnik v Colonie Ctr. Ct. Club*, 249 AD2d 873, 875 [1998], *lv denied* 92 NY2d 808 [1998]; *see also Morgan v State of New York*, 90 NY2d 471 [1997]). After the heart attack, the club's employees more than fulfilled their duty of care by immediately calling 911 and performing CPR, had no common-law duty to use the AED, and could not be held liable for not using it.

Nor was the club vicariously liable for breaching a common-law duty of care that the employees had assumed by coming to Digiulio's aid as "Good Samaritans." Since the employees were providing emergency medical treatment to Digiulio, they could only have been liable for gross negligence (*see* Public Health Law § 3000-a [1]), which is "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional

wrongdoing" (*Colnaghi, U.S.A. v Jewelers Protection Servs.*, 81 NY2d 821, 823-824 [1993]). The complained-of conduct—namely, James's failure during an ongoing crisis to check whether the cabinet door was locked before searching for the key, and the treatment of Digiulio with CPR instead of the AED—does not constitute gross negligence.

Turning to the statutory claim, we reject plaintiff's argument that General Business Law § 627-a implicitly obligated the club to use its AED to treat Digiulio. While the statute explicitly requires health clubs to have AEDs and people trained to operate them on their premises, it is silent as to the clubs' duty, if any, to use the devices. As discussed, the common law does not recognize that duty, and to interpret section 627-a as implicitly creating a new duty would conflict with the rule that legislative enactments in derogation of common law, and especially those creating liability where none previously existed, must be strictly construed (*Vucetovic v Epsom Downs, Inc.*, 10 NY3d 517, 521 [2008]).

The statute's limitation of the liability of health clubs and their agents when "voluntarily" using AEDs to aid stricken persons (*see* § 627-a [3]) indicates that its use is not obligatory. While the Legislature meant to require health clubs to make AEDs available and encourage their use in medical emergencies, it did not intend to impose liability on clubs for usage failures.

Finally, we agree with the motion court that the club complied with the statutory requirement to have an AED "on the premises" by storing it in an unlocked cabinet on the wall of an exercise room. Plaintiff argues that the statute implicitly requires health clubs to make their AEDs accessible for use, and that under the circumstances the AED in defendants' club was inaccessible because it was in a cabinet that James mistakenly believed was locked. This argument is unavailing. The club's AED was not inaccessible and was unavailable only because James in his agitated state did not think of trying to open the cabinet. As the motion court pointed out, section 627-a cannot be construed as imposing liability on a health club where only its employee's mistake prevented him or her from gaining access to the AED. Concur—Nardelli, J.P., McGuire, Acosta, Freedman and Román, JJ. **[Prior Case History: 26 Misc 3d 418.]**