[985 NE2d 128, 961 NYS2d 364]

GREGORY C. MIGLINO, JR., as Executor of GREGORY C. MIGLINO, SR., Deceased, Respondent, v BALLY TOTAL FITNESS OF GREATER NEW YORK, INC., Appellant, et al., Defendant.

Argued January 3, 2013; decided February 7, 2013

## POINTS OF COUNSEL

*Morrison Mahoney LLP*, New York City (*Brian P. Heermance* and *Demi Sophocleous* of counsel), for appellant. I. Plaintiff assumed the risk of cardiac arrest when he engaged in strenuous physical activity at defendant's health club. (*Morgan v State of New York*, 90 NY2d 471; *Rutnik v Colonie Ctr. Ct. Club*, 249 AD2d 873; *Chappill v Bally Total Fitness Corp.*, 2011 NY Slip Op 30146[U].) II. Defendant is immune from liability under New York's Good Samaritan Statute. III. Defendant had no legal duty to use an Automated External Defibrillator and, therefore, plaintiff's complaint fails to state a viable cause of action. (*Rutnik v Colonie Ctr. Ct. Club*, 249 AD2d 873; *Putrino v*

*Buffalo Athletic Club*, 193 AD2d 1127; *Chappill v Bally Total Fitness Corp.*, 2011 NY Slip Op 30146[U]; *Vucetovic v Epsom Downs, Inc.*, 10 NY3d 517; *Brown v Barry*, 3 US 365; *Janssen v Incorporated Vil. of Rockville Ctr.*, 59 AD3d 15; *Digiulio v Gran, Inc.*, 74 AD3d 450, 17 NY3d 765.)

*Charnas Law Firm, P.C.*, Garden City (*John V. Decolator* and *Scott E. Charnas* of counsel), for respondent. I. The Appellate Division properly held that the complaint states a cognizable cause of action based upon Bally Total Fitness of Greater New York, Inc.'s failure to use its Automated External Defibrillator upon the decedent. (*State of New York v Cities Serv. Co.*, 180 AD2d 940; *Zappone v Home Ins. Co.*, 55 NY2d 131; *Ragucci v Professional Constr. Servs.*, 25 AD3d 43; *Westchester County Socy. for Prevention of Cruelty to Animals v Mengel*, 266 App Div 151, 292 NY 121; *Parvi v City of Kingston*, 41 NY2d 553; *Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507; *Kaplan v Dart Towing*, 159 AD2d 610; *Mirza v Metropolitan Life Ins. Co.*, 2 AD3d 808; *Walsh v Town of Cheektowaga*, 237 AD2d 947; *Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579.) II. Bally Total Fitness of Greater New York, Inc. is not immune from liability under New York's Good Samaritan Statute. (*Salvia v Long Is. R.R.*, 207 AD2d 534; *McDaniel v Keck*, 53 AD3d 869.) III. Bally Total Fitness of Greater New York, Inc.'s assumption of risk argument is unpreserved. (*Bingham v New York City Tr. Auth.*, 99 NY2d 355; *Misicki v Caradonna*, 12 NY3d 511.)

### OPINION OF THE COURT

READ, J.

On March 26, 2007, plaintiff Gregory C. Miglino, Jr.'s father, Gregory C. Miglino, Sr. (Miglino or decedent), collapsed while near the racquetball courts at a health club owned and operated by Bally Total Fitness of Greater New York, Inc. (Bally). Kenneth LaGrega, employed by Bally as a personal trainer, was standing at the club's front desk with the receptionist when he learned of this medical emergency. The receptionist immediately called 911, and an announcement was broadcast summoning anyone with medical training to the front desk; the receptionist also brought the club's Automated External Defibrillator (AED) to Miglino's side. An AED is a portable medical device for delivery of an electroshock to restore normal heart rhythm (*see* Public Health Law § 3000-b [a]). As the 911 call was being made, LaGrega rushed to assist Miglino.

LaGrega saw that Miglino was lying on his back with his eyes open, breathing heavily and with normal color; he checked for

and found a faint pulse. LaGrega was certified to operate an AED and to administer cardiopulmonary resuscitation (CPR), having successfully completed courses taught under the aegis of the American Heart Association to instruct people in these skills. He did not start CPR or use the AED, though, later declaring that he was trained to view such measures as "inappropriate in light of a breathing individual with detectable pulse." LaGrega then left briefly to check on the status of the 911 response. When he returned, two club members previously known to him to be a doctor and a medical student were attending to Miglino and administering CPR. LaGrega assisted as needed, having concluded that the doctor and medical student were "in a better position [than he was] to continue caring for [Miglino] until paramedics arrived," a judgment "in keeping with [his] American Heart Association training, as well as the emergency training [he] received from Bally." Upon arrival, the ambulance personnel administered shocks to Miglino with an AED, but he never revived.

By summons and complaint filed on February 26, 2008, plaintiff, as executor of decedent's estate, brought a wrongful death suit against Bally and Bally Total Fitness Corporation (Bally Total). The complaint alleged that Bally and Bally Total neither "provided nor caused to be provided a . . . person in attendance at the club" who was properly certified to operate an AED or perform CPR, as required by New York law; and that Bally employees negligently failed to use an available AED, or failed to use it within sufficient time, to save Miglino's life. Bally and Bally Total served a joint answer to the complaint on April 8, 2008; by notice of motion dated June 23, 2008, they moved to dismiss pursuant to CPLR 3211 (a) (7) for failure to state a cause of action.

Bally primarily argued that it was immune from liability under the State's Good Samaritan Law (Public Health Law § 3000-a); Bally Total, that it did not own or operate the health club. In support of the motion, Bally submitted LaGrega's affidavit, in which he described his training and the actions that he and other club personnel took to assist Miglino, related above, and copies of his CPR/AED certificate from the American Heart Association; Bally Total furnished the affidavit of its assistant vice-president and associate general counsel, who attested that Bally Total did not own, operate, manage or employ any personnel at the club, and therefore could not be vicariously liable for the acts or omissions alleged by plaintiff.

Plaintiff opposed Bally's motion, contending that the Good Samaritan Law did not apply because, among other reasons, Bally's employees did not, in fact, render emergency treatment to Miglino since LaGrega neglected to apply the AED; and that Bally had a statutory and common-law duty to use the AED. Plaintiff submitted the affidavit of a board-certified cardiologist, who opined that Miglino's "chances of survival would have been significantly higher if the AED had been used within the first few minutes after his collapse" rather than upon arrival of the ambulance. Plaintiff did not oppose dismissal of the complaint against Bally Total.

On June 9, 2010, Supreme Court denied the motion in its entirety (2010 NY Slip Op 33790[U] [2010]). The court commented that Bally's evidentiary affidavits made out a "strong, but not conclusive showing that the plaintiff does not have a cause of action" (id. at *2). The court added, however, that "plaintiff [was] not obligated to come forth with evidence as he would on a motion for summary judgment to withstand dismissal"; as a result, the judge, "being only concerned with the sufficiency of the plaintiff's pleadings, and not evidentiary matters," determined that the complaint stated cognizable claims (id. at *2, *3).

In a decision and order dated December 27, 2011, the Appellate Division modified Supreme Court's order by dismissing the complaint against Bally Total and otherwise affirming (92 AD3d 148 [2d Dept 2011]). The Second Department held, contrary to the First Department's decision in Digiulio v Gran, Inc. (74 AD3d 450, 453 [2010], affd on other grounds 17 NY3d 765 [2011]), that General Business Law § 627-a, which mandates certain health clubs to maintain on premises at least one AED and an individual trained to operate it, "also imposes an affirmative duty of care upon the facility so as to give rise to a cognizable statutory cause of action in negligence for failure to [do so]" (92 AD3d at 150). The court additionally concluded that the complaint stated a cause of action against Bally "based solely upon common-law negligence" because "LaGrega assumed a duty by coming to the decedent's assistance" (id. at 159, 160). Finally, the Appellate Division held that Bally Total was entitled to dismissal of the complaint insofar as asserted against it, as conceded by plaintiff both at Supreme Court and on appeal.

Bally subsequently moved in the Appellate Division for permission to appeal. By order entered on March 19, 2012, that

court certified the following question to us: "Was the opinion and order of [the Appellate Division,] dated December 27, 2011, properly made with respect to the cause of action asserted against [Bally]?" We now answer the question in the negative, but affirm the result on procedural grounds only.

## General Business Law § 627-a

General Business Law § 627-a (1) requires every health club, as defined under Public Health Law § 3000-d (1) (b),[1] with 500 or more members to

> "have on premises at least one [AED] and [to] have in attendance, at all times during staffed business hours, at least one individual performing employment or individual acting as an authorized volunteer who holds a valid certification of completion of a course in the study of the operation of AEDs and a valid certification of the completion of a course in the training of [CPR] provided by a nationally recognized organization or association."

Subdivision (2) provides that "[h]ealth clubs and staff pursuant to [General Business Law § 627-a (1)] shall be deemed a 'public access defibrillation provider' as defined in [Public Health Law § 3000-b (1) (c)] and shall be subject to the requirements and limitations of such section" (General Business Law § 627-a [2]). Under section 3000-b (1) (c), a "public access defibrillation provider" means "a person, firm, organization or other entity possessing or operating an [AED] pursuant to a collaborative agreement under this section"; and subdivision (2) of section 3000-b states

> "Collaborative agreement. A person, firm, organization or other entity may purchase, acquire, possess and operate an [AED] pursuant to a collaborative

---

1. This provision defines "[h]ealth club" as

"any commercial establishment offering instruction, training or assistance and/or the facilities for the preservation, maintenance, encouragement or development of physical fitness or well-being. 'Health club' as defined herein shall include, but not be limited to health spas, health studios, gymnasiums, weight control studios, martial arts and self-defense schools or any other commercial establishment offering a similar course of physical training" (Public Health Law § 3000-d [1] [b]).

> agreement with an emergency health care provider.[2] The collaborative agreement shall include a written agreement and written practice protocols, and policies and procedures that shall assure compliance with this section. The public access defibrillation provider shall file a copy of the collaborative agreement with the [New York State Department of Health] and with the appropriate regional council prior to operating the [AED]."

Additionally, Public Health Law § 3000-b (4) provides that the "[o]peration of an [AED] pursuant to this section [governing public access providers] shall be considered first aid or emergency treatment for the purpose of any statute relating to liability." This is a clear reference to Public Health Law § 3000-a, the Good Samaritan Law, which protects volunteers who supply first aid or emergency treatment outside a medical facility from liability for injuries or death unless caused by their gross negligence. The broad goal of the Good Samaritan Law is to prompt aid by people under no duty to act who otherwise might be dissuaded by the prospect of ordinary tort liability.

Finally, General Business Law § 627-a (3) specifies that

> "[p]ursuant to [Public Health Law § 3000-a (the Good Samaritan Law)] and [Public Health Law § 3000-b (Public Access Providers)], any public access defibrillation provider, or any employee or other agent of the provider who, in accordance with the provisions of this section, voluntarily and without expectation of monetary compensation renders emergency medical or first aid treatment using an AED which has been made available pursuant to this section, to a person who is unconscious, ill or injured, shall be liable only pursuant to [Public Health Law § 3000-a]."

Plaintiff contends (and the Second Department held) that section 627-a creates an affirmative duty for health clubs to use the AEDs which they are required to have available for a trained employee or authorized volunteer to employ in the event of a cardiac emergency. We do not agree. The provisions of section 627-a, read together with Public Health Law §§ 3000-a and

---

2. Public Health Law § 3000-b (1) (b) defines an "emergency health care provider" as "(i) a physician with knowledge and experience in the delivery of emergency cardiac care; or (ii) a hospital licensed under article twenty-eight of this chapter that provides emergency cardiac care."

3000-b, to which they explicitly refer, and the words "volunteer" (General Business Law § 627-a [1]) and "voluntarily" (General Business Law § 627-a [3]) evince the legislature's intent to protect health clubs and their employees from the risk of liability for ordinary negligence with respect to AEDs.

As the First Department pointed out in *Digiulio*, a health club had no duty at common law to use an AED, and could not be held liable for failing to do so (*Digiulio*, 74 AD3d at 452). Accordingly,

> "to interpret section 627-a as implicitly creating a new duty would conflict with the rule that legislative enactments in derogation of common law, and especially those creating liability where none previously existed, must be strictly construed. The statute's limitation of the liability of health clubs and their agents when 'voluntarily' using AEDs to aid stricken persons indicates that its use is not obligatory. While the Legislature meant to require health clubs to make AEDs available and encourage their use in medical emergencies, it did not intend to impose liability on clubs for usage failures" (*id.* at 453 [citations omitted]).

In sum, we now resolve the issue that we left open when we affirmed *Digiulio* on other grounds: we hold that General Business Law § 627-a does not create a duty running from a health club to its members to use an AED required by that provision to be maintained on site.

The dissent objects that our interpretation renders section 627-a "virtually meaningless" (dissenting op at 352) and "purposeless" (*id.* at 353). On the contrary, there is nothing meaningless or purposeless about a statute that seeks to insure the availability of AEDs and individuals trained in their use at locations—i.e., health clubs—where there is a population at higher risk of sudden cardiac arrest. Obviously, though, AEDs are not meant to be employed mindlessly. For example, the implied duty favored by the dissent would cause a dilemma for the lay health club employee whenever a volunteer medical professional is furnishing aid at the scene, as allegedly happened here and in *Putrino v Buffalo Athletic Club* (193 AD2d 1127 [4th Dept 1993], *affd* 82 NY2d 779 [1993]), discussed later.

A law that mandates the presence of AEDs and trained individuals at health clubs is easy to obey and enforce. The implied duty envisioned by the dissent is neither; such a duty

would engender a whole new field of tort litigation, saddling health clubs with new costs and generating uncertainty. The legislature is unlikely to have imposed such a new duty absent an express statement, especially given the remedy of treble damages provided by General Business Law § 628.[3]

## Common Law Liability

New York courts have viewed health clubs as owing a limited duty of care to patrons struck down by a heart attack or cardiac arrest while engaged in athletic activities on premises. For example, in *Putrino*, the decedent suffered a fatal heart attack while participating in an aerobics class at an athletic club. Plaintiff, administratrix of the decedent's estate, claimed that the club's employees negligently rendered emergency treatment to the decedent while awaiting the rescue squad. The court concluded, however, that the club was entitled to summary judgment where its personnel deferred to the superior medical training and experience of a nurse, called 911 immediately, and sent someone to the first floor to direct emergency personnel to the decedent.

In *Rutnik v Colonie Ctr. Ct. Club* (249 AD2d 873 [3d Dept 1998]), the decedent collapsed while playing racquetball during a tournament at a tennis club; the cause of death was later determined to be cardiac arrest as a consequence of atherosclerotic heart disease. The court held that the club had not breached any duty owed the decedent and was entitled to summary judgment where the entire staff was trained in CPR and 911 was called. The Appellate Division rejected the notion that the club was negligent for not having a defibrillator on hand in case a cardiac emergency cropped up during the tournament.

The facts in *Digiulio* were unusual. The decedent suffered cardiac arrest while exercising on a treadmill at a health club. There was an AED on the premises, as was by then required by section 627-a, but the employee trained in its operation saw

---

**3.** Section 628 (1) specifies that *"[a]ny buyer* damaged by *a violation of this article* [30 (Health Club Services)] may bring an action for recovery of damages. Judgment may be entered in an amount not to exceed three times the actual damages plus reasonable attorney fees" (General Business Law § 628 [1] [emphases added]). This private right of action is available, by its literal terms, to enforce General Business Law § 627-a since "buyer" is defined in article 30 as "any individual who enters into a contract for services with a health club" (General Business Law § 621 [5]). Thus, if the legislature in section 627-a enacted a duty to use the AED, as the dissent contends, then violation of that duty would subject a health club to treble damages.

that the device was stored in a glass case with a visible key lock mechanism. Later admitting to panic, he ran to the front desk to look fruitlessly for the key. In fact, though, the glass case was unlocked all along. Meanwhile, other staff called 911 and performed CPR. Emergency services personnel arrived within 10 minutes and successfully used their AED to restore Digiulio's heartbeat. He had suffered anoxic brain damage by that time, however, and he died a few months later. On these facts, the Appellate Division determined that the "club's employees more than fulfilled their duty of care by immediately calling 911 and performing CPR" (74 AD3d at 452); we agreed that the health club "did not breach any common-law duty to render aid to the decedent" (17 NY3d at 767).

In *Putrino*, *Rutnik* and *Digiulio*, the courts considered whether the health club defendants were entitled to summary judgment. In this case, though, Bally has moved to dismiss under CPLR 3211 (a) (7), which limits us to an examination of the pleadings to determine whether they state a cause of action. Further, we must accept facts alleged as true and interpret them in the light most favorable to plaintiff; and, as Supreme Court observed, plaintiff may not be penalized for failure to make an evidentiary showing in support of a complaint that states a claim on its face (*see Rovello v Orofino Realty Co.*, 40 NY2d 633, 635 [1976] [as long as a pleading is facially sufficient, the plaintiff is not obligated to come forward with claim-sustaining proof in response to a motion to dismiss unless the court treats the motion as one for summary judgment and so advises the parties]).

▮ Here, the complaint asserts that Bally did not "employ or properly employ life-saving measures regarding [Miglino]" after he collapsed. Bally's motion is supported by affidavits that contradict this claim, by purporting to show that the minimal steps adequate to fulfill a health club's limited duty to a patron apparently suffering a coronary incident—i.e., calling 911, administering CPR and/or relying on medical professionals who are voluntarily furnishing emergency care—were, in fact, undertaken. But, as noted before, this matter comes to us on a motion to dismiss, not a motion for summary judgment. As a result, the case is not currently in a posture to be resolved as a matter of law on the basis of the parties' affidavits, and Miglino has at least pleaded a viable cause of action at common law.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs, and the certified question answered in the negative.

Chief Judge LIPPMAN (dissenting in part). Although the majority opinion recognizes a limited common-law duty running from a health club to its patrons who suffer a heart attack while exercising at the facility, it finds that an analogous statutory duty is not imposed by General Business Law § 627-a. Because I do not believe the statute should be interpreted in a way that renders it virtually meaningless, I respectfully dissent from that portion of the decision.

The statute plainly requires that health clubs maintain an automated external defibrillator (AED) on the premises and that a person trained in its use must be present during business hours (*see* General Business Law § 627-a [1]). In addition, as a public access defibrillation provider, the health club and its employees who render aid using the AED will be subject to liability only in accordance with Public Health Law § 3000-a—the "Good Samaritan" Statute (*see* General Business Law § 627-a [3]; Public Health Law § 3000-b [1] [c]). The Good Samaritan Statute provides that "any person who voluntarily and without expectation of monetary compensation renders first aid or emergency treatment" will not be liable for damages for injuries sustained as the result of such treatment, unless the injuries were caused by gross negligence on the part of the person rendering aid (*see* Public Health Law § 3000-a [1]).

The legislative history demonstrates that the intent behind requiring AEDs in health clubs was based on the recognition that the likelihood of cardiac arrest increases in locations where individuals engage in physical exertion and that there is a dramatic reduction in the fatality rate from such episodes with the immediate use of AEDs and CPR (*see* Assembly Mem in Support, Bill Jacket, L 2004, ch 186). Indeed, the measure was meant to "ensure a higher level of safety for thousands of [i]ndividuals who belong to health clubs" (Assembly Mem in Support, Bill Jacket, L 2004, ch 186). It should go without saying that the presence of an AED will be of no benefit whatsoever to a person in cardiac arrest unless, of course, it is actually used.

In the absence of any explicit statement concerning whether or not the statute imposes a duty to use the AED, the statute should be interpreted in a way that is consistent with its spirit and benevolent aim (*see Matter of New York City Asbestos Litig. [Brooklyn Nav. Shipyard Cases]*, 82 NY2d 342, 352 [1993]; McKinney's Cons Laws of NY, Book 1, Statutes § 96 at 210 ["The courts will assume that a statute was not enacted without

some purpose, and also that it was a practical and reasonable one, directed to some useful result, beneficial to some persons; and, acting on such assumption, they will attempt to ascertain such purpose"]). The majority opinion, however, does the opposite. As read by the majority, the legislature enacted an essentially purposeless statute that requires health clubs to purchase AEDs and train employees to use them, but does not require that the devices be applied in any potentially lifesaving situation. I cannot agree with an interpretation that is so plainly contrary to accomplishing the goal of the legislation. I would find that plaintiff's statutory claim states a sufficient cause of action.

In light of the majority opinion, the legislature in its discretion may wish to revisit the statute and make clear that health clubs are in fact under a duty to make use of AEDs they are required to have on their premises.

Judges GRAFFEO, SMITH and PIGOTT concur with Judge READ; Chief Judge LIPPMAN dissents in part in an opinion.

Order, insofar as appealed from, affirmed, with costs, and certified question answered in the negative.