This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 111
Paul Davis,
        Appellant,
    v.
Scottish Re Group Limited,
et al.,
        Respondents,
et al.,
        Defendants.

Eric Brenner, for appellant.
Jean-Marie L. Atamian, for respondents.

FEINMAN, J.:

Plaintiff Paul Davis was an owner of ordinary shares in defendant Scottish Re Group, Limited (Scottish Re), a Cayman Islands company formerly engaged in the business of reinsurance. He asserted both direct and derivative causes of action against Scottish Re, its indirect wholly-owned operating subsidiary

- 1 -

Scottish Re (U.S.), Inc. (SRUS), certain members of the Board of
Directors of Scottish Re and SRUS, Massachusetts Mutual Life
Insurance Company (MassMutual) and the private equity firm
Cerberus Capital Management, L.P. (Cerberus), and various
entities affiliated with MassMutual and Cerberus.  Plaintiff
alleged that MassMutual and Cerberus, through certain of their
affiliates, worked in concert with Scottish Re directors that
were beholden to them to implement a series of transactions that
enriched themselves, while causing harm to minority shareholders
like plaintiff and to Scottish Re.  The only claims relevant to
this appeal, as limited by the parties' briefs, are plaintiff's
derivative claims.

Supreme Court dismissed the majority of plaintiff's
complaint, including his three derivative causes of action, on
two grounds.  It held that, under Cayman Islands law, plaintiff
had not established standing because he did not seek leave of
court to commence a derivative action under Rule 12A of the Rules
of the Grand Court of the Cayman Islands.  In the alternative,
Supreme Court held that plaintiff did not have standing to bring
his derivative claims under Cayman Islands common law, which
applies the test embodied in the 1843 English case, Foss v
Harbottle (2 Hare 461 [1843]).

The Appellate Division modified, to allow plaintiff to
replead two claims not at issue here, and otherwise affirmed
based on plaintiff's noncompliance with Rule 12A, holding that

the rule applied because it was substantive, rather than procedural.[1]  It did not reach the question of whether plaintiff had standing under Foss v Harbottle.  The Appellate Division granted leave to appeal and certified the following question: "Was the order of this Court, which modified the order of Supreme Court, properly made?"

The dispositive issue in this appeal is whether Rule 12A, contained in Order 15 of the Cayman Islands Grand Court Rules 1995 (Revised),[2] is a substantive rule and therefore applies under our choice of law principles, barring plaintiff from bringing his derivative action on behalf of Scottish Re.  We hold that Rule 12A is procedural, and therefore does not apply where, as here, a plaintiff seeks to litigate his derivative claims in New York.  Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, and the matter remitted for consideration of whether plaintiff has standing under Cayman substantive law.

I.

Rule 12A, which was introduced into the Cayman Islands

---

[1] All five justices agreed that Rule 12A barred plaintiff's derivative claims from being litigated in New York.  Two justices dissented on the issue of whether plaintiff should be permitted to replead the two claims that had impermissibly merged direct and derivative allegations (138 AD3d 230, 240 [1st Dept 2016]). These claims are not at issue.

[2] The Cayman Islands Grand Court Rules 1995 (Revised), is a pdf document available online through a direct search using those terms (last accessed Nov. 14, 2017).

Grand Court Rules in 1995, addresses shareholder derivative actions, and states, in relevant part:

> "(1) This rule applies to every action begun by writ by one or more shareholders of a company where the cause of action is vested in the company and relief is accordingly sought on its behalf (referred to in this rule as a 'derivative action').
>
> (2) Where a defendant in a derivative action has given notice of intention to defend, the plaintiff must apply to the Court for leave to continue the action.[3]
>
> (3) The application must be supported by an affidavit verifying the facts on which the claim and the entitlement to sue on behalf of the company are based.
>
> * * *
>
> (8) On the hearing of the application under paragraph (2), the Court may --
>
> (a) grant leave to continue the action, for such period and upon such terms as the Court may think fit;
>
> (b) subject to paragraph (11),[4] dismiss the action;
>
> (c) adjourn the application and give such direction as to joinder of parties, the filing of further evidence, discovery, cross examination of deponents and otherwise as it may consider expedient."

In sum, the relevant sections of Rule 12A provide that

---

[3] "Court" is defined under section 2 in the Cayman Islands Grand Court Law as, "the Grand Court and includes a Judge of that Court." The Grand Court Law (2015 Revision) is a pdf document available online through a direct search using those terms (last accessed Nov. 14, 2017).

[4] Paragraph 11 provides that where a plaintiff's derivative claims are dismissed, there is no prejudice to the plaintiff's right to continue the action as to the remaining claims.

a plaintiff bringing a contested derivative action in the Cayman

Islands must apply to the Cayman Islands Grand Court for leave to

continue the action, entailing a hearing and a decision issued by

the Court.  Other sections of Rule 12A prescribe the time table

for the parties to submit their arguments, allow the defendant to

seek dismissal based on the plaintiff's failure to abide by the

time frames, and allow for interlocutory appeals and requests for

indemnity (see Rule 12A [6], [7], [9], [13]).

> The first published decision from the Cayman Islands to
interpret Rule 12A is Renova Res. Private Equity Ltd. v
Gilbertson (CILR 268 [2009]), a 2009 case involving a Bahamian
plaintiff derivatively suing several defendants, including Cayman
companies, in the Cayman Islands courts.  Renova explained that
the "purpose" of requiring plaintiffs to obtain leave to continue
their derivative actions, is to protect corporate defendants from
the time and expense of "vexatious or unfounded litigation which
has little or no prospect of success or which is clearly brought
by an aggrieved shareholder for his [or her] own reasons rather
than in the interests of the company" (id. at 283 ¶ 35).  The
Renova court applied a "prima facie" test,[5] and found that the
plaintiff had standing and its claims were meritorious; it then

---

[5] Renova's prima facie test requires a factual showing, and
therefore differs from New York's CPLR 3211 (a) standard which
requires the court to construe all allegations in the complaint
as true and mandates only that the allegations in the complaint
state a cause of action (see e.g. Miglino v Bally Total Fitness
of Greater N.Y., 20 NY3d 342, 351 [2013]).

set a briefing schedule as provided under Rule 12A (id. at 277 ¶ 17; 298 ¶ 73 ).

                                    II.

        The parties agree that Cayman Islands substantive law governs the merits of this action, and were we to address the merits of plaintiff's claims, we would employ the Cayman Islands Companies Law[6] or other law relied upon by the parties.  However, under New York common-law principles, procedural rules are governed by the law of the forum (see Tanges v Heidelberg N. Am., Inc., 93 NY2d 48, 53 [1999]; Martin v Julius Dierck Equip. Co., 43 NY2d 583, 588 [1978]).  The parties disagree as to whether Rule 12A is a part of the Cayman Islands substantive law concerning derivative actions, or is a procedural rule that then does not apply to actions litigated in New York. Where there is disagreement as to the nature of a law, "the law of the forum normally determines for itself whether a given question is one of substance or procedure" (Tanges, 93 NY2d at 54).  We recognize, however, that the foreign jurisdiction's designation of the rule as procedural or substantive, while "instructive," is not dispositive (id.).

        Plaintiff argues that Rule 12A, as expounded by the Cayman judiciary in Renova, is a procedural rule governing the

_____

        [6] The Cayman Islands Companies Law is reproduced online as a pdf by the law firm of Conyers Dill & Pearman, "as a service to their clients."  See https://www.conyersdill.com/consolidatedact-files/Cayman_Companies_Law_Conyers.pdf (last accessed Nov. 14, 2017).

way in which the parties appear before the Cayman courts, what manner of evidence shall be presented and, should a court make a determination to grant the plaintiff leave to continue, the next steps to be taken toward ultimate resolution of a derivative action.  Plaintiff therefore contends that, as a procedural rule, Rule 12A does not apply to derivative actions on behalf of Cayman companies litigated in New York courts.

Defendants, by contrast, argue that Rule 12A functions as a substantive "gatekeeper" in derivative actions involving Cayman Island companies.  Relying on the internal affairs doctrine, which provides that relationships between a company and its directors and shareholders are generally governed by the substantive law of the jurisdiction of incorporation, and on ARC Capital LLC v Kalra (2013 NY Slip Op 31316[U], 2013 WL 3072008, 2013 N.Y. Misc. LEXIS 2600 [Sup Ct, NY County 2013, 652932/2012]), defendants argue that Rule 12A, pertaining specifically to derivative actions, is a component of the Cayman Islands Companies Law, and is therefore incorporated into the substantive law.  Thus, under defendants' reading of Rule 12A, a shareholder-plaintiff filing a derivative action on behalf of a Cayman Islands-organized company anywhere in the world must comply with Rule 12A, and seek and be granted leave by the Grand Court to continue its action.  In the case at bar, plaintiff's action, notwithstanding defendants' construction of Rule 12A, has been litigated solely in New York.  Defendants thus contend

application of Rule 12A mandates dismissal of plaintiff's
derivative claims because plaintiff did not first seek leave from
the Grand Court to continue the derivative claims pursuant to
Rule 12A.

                                III.

          We first look at the plain language of Rule 12A (see
King v Cuomo, 81 NY2d 247, 253 [1993]).  Rule 12A states that it
pertains to all derivative actions "commenced by writ," and that
the trigger for applying to the Grand Court occurs when the
defendant has "given notice of intention to defend."  Both
procedures are specific to Cayman Islands litigation.  The term
"writ" is clearly inapplicable to jurisdictions, such as New
York, in which such actions are not commenced by writ.
Additionally, under the Grand Court Rules, the defendant
acknowledges service of the writ by completing a specified form
which includes a box to be checked off indicating the intent to
defend (see Grand Court Rules 1995 [Revised], O. 6; O. 12 r. 1).[7]
Under this analysis, Rule 12A is a procedural rule that does not
apply in New York Courts.

          Rule 12A also states that it applies to "every
shareholder action commenced by writ."  By its terms, it does not
specifically apply to actions involving *Cayman*-incorporated
companies.  The plain meaning of these words is that any

---

          [7] Available online as a direct search using those terms
(last accessed Nov. 14, 2017).

derivative action commenced in the Cayman Islands, brought by writ on behalf of *any* corporation, no matter where incorporated, is subject to Rule 12A.  Thus, it serves a gatekeeping function, but only as to derivative actions brought in the Cayman Islands, not for derivative actions, wherever brought, concerning Cayman companies specifically.

In addition, Rule 12A has no provision that would suggest that it applies, as urged by defendants, in derivative actions brought on behalf of Cayman Island companies commenced outside the Cayman Islands.  Had the Rules Committee, the body appointed by the Cayman Islands Grand Court to make rules relative to practice and procedure in the Grand Court, intended that Rule 12A apply to derivative actions involving Cayman Islands companies anywhere in the world, it could have expressly provided as such.[8]  The British Virgin Islands' Business Companies Act (2004, § 184C), for instance, requires that any shareholder intending to commence a derivative action on behalf of a BVI-incorporated company, first obtain leave from a BVI court (see e.g. Microsoft Corp. v Vadem, CIVA 6940-VCP, 2012 WL 1564155 [Del Ch, Apr 27, 2012];  Vaughn v LJ Internat., Inc., 174

_____

[8] The Rules Committee is authorized under the Grand Court Law, to make rules, "to be called Rules of Court," for purposes including "(a) regulating pleading, practice and procedure in respect of the conduct of criminal business and of civil business before the Court in relation to all matters within the jurisdiction of the Court, whether original or appellate in nature" (Grand Court Law [2015 Revision], § 3, § 19 [3] [a], emphasis added) (last accessed Nov. 14, 2017).

Cal App 4th 213, 221, 225 [2009]; see also Dragon Inv. II Co. v

Shanahan, 2007 WL 4144251, *3-4 [Sup Ct, New York County 2007,

No. 0602868/2005]).  Likewise, the Canada Business Corporations

Act (RSC 1985, c. C-44, s 239), requires any shareholder seeking

to commence a derivative action on behalf of a Canadian

corporation to obtain leave from a Canadian court, and upon being

granted leave, the action must be commenced solely in certain

enumerated Canadian courts (see Locals 302 & 612 of the Intl

Union of Operating Engineers-Employers Constr. Indus. Retirement

Trust v Blanchard, 2005 WL 2063852, 2005 US Dist LEXIS 17679 [SD

NY 2005, 04 Civ. 5954 [LAP]).  Rule 12A does not have a similar

provision and lacks any extra-jurisdictional authority.

                              IV.

          Defendants' reliance on this Court's holding in Tanges

v Heidelberg N. A. (93 NY2d 48), is misguided.  In that case, we

examined the language of a Connecticut product liability statute

of limitation that included a statute of repose barring any

action commenced later than 10 years from the date the defendant

no longer had control of the injury-causing product (93 NY2d at

52-53, 55).  In Connecticut, the statute was considered

procedural, and the question before this Court was whether the

statute should be considered procedural or substantive under New

York choice of law rules.  The same issue is before us; if Rule

12A is substantive, we would be required to apply it.  If it is

procedural, we would not.

In Tanges, we reasoned that statutes of limitation are generally treated as procedural in New York because they pertain "to the remedy rather than the right," meaning that when the allotted time period under the statute has expired, the plaintiff loses its remedy, although it continues to have the underlying right (see Tanges, 93 NY2d at 54-55 [internal quotation marks and citation omitted]).  Statutes of limitation begin to run when a cause of action accrues (see CPLR 203 [a]).

Statutes of repose are "theoretically and functionally" different (Tanges, 93 NY2d at 55).  A statute of repose begins to run when a specified event takes place, and can expire before a possibly valid cause of action ever accrues (id.).  The repose period creates an "absolute barrier" to a plaintiff's right of action (id. [internal quotation marks omitted]).  Given this potential impact on the right of a plaintiff to bring a cause of action, the Tanges Court held that repose statutes "exhibit a substantive texture, nature and consequence," different from regular statutes of limitation, and thus are substantive (id. at 56).  In other words, unlike a statute of limitations, a statute of repose "envelop[es] both the right and the remedy" (id.).[9]

Defendants argue that Rule 12A functions similarly to

---

[9] "[W]e may say that the substantive law defines the remedy and the right, while the law of procedure defines the modes and conditions of the application of the one to the other" (John William Salmond, Jurisprudence at 548 [Glanville L. Williams ed 1947]).

repose statutes and is therefore substantive.  We disagree.
Statutes of repose can negate a plaintiff's right to ever bring
an action in court.  Rule 12A does not; it *allows* any plaintiff
the right to commence a derivative action, and sets forth a
procedural mechanism for a threshold determination of merits and
standing.  Certainly, if a plaintiff does not seek leave to
continue, the rule creates an impregnable barrier to continuing
the derivative action, forestalling any remedy, just as a statute
of limitations forecloses a plaintiff who sleeps on its rights
from obtaining a remedy.  However, Rule 12A itself neither
creates a right, nor defeats it.  Rather, it is the initial
decision by the Grand Court judge, made after an evaluation of
the plaintiff's complaint using the substantive law, along with
the defendant's evidence, that may terminate the action.

In Tanges, we also described general policy
considerations that ought to be weighed when determining whether
a rule is substantive or procedural.  Specifically, we consider
whether our determination would impose a burden on the foreign
court (Connecticut in that instance) or federal courts operating
under diversity rules and whether it would threaten to cause
delay in the "conduct of judicial business and impair judicial
efficiency" (id. at 58 [internal citations and quotation
omitted]).  Here, these factors further weigh in favor of our
conclusion that Rule 12A is procedural.

Holding that Rule 12A is procedural does not impose a

burden on our courts, or the courts of the Cayman Islands (see Tanges, 93 NY2d at 58). However, were Rule 12A held to be substantive, it is unclear what procedural path a party seeking to bring a derivative action in New York on behalf of a Cayman company would follow to comply with Rule 12A. Must the party first proceed by writ in the Grand Court and then discontinue the Cayman action to return to, or commence its action here in New York? Would the ruling by the Grand Court that there was a sufficient showing of merit be binding on a New York court on a motion to dismiss or for summary judgment? Rule 12A provides no answers.

Therefore, a Tanges analysis also leads to the conclusion that Rule 12A is procedural in nature. Because the procedural law of the forum typically applies under our conflict of law rules (see Kilberg v Northeast Airlines, 9 NY2d 34, 41 [1961]), plaintiff's failure to first comply with Rule 12A's leave application procedure does not bar his derivative claims.[10]

V.

New York applies other states' and countries' substantive laws with regularity. We are not aware of any authority stating that under Cayman Islands law, *only* Cayman Islands courts can interpret Cayman law. We also have our own "gatekeeping" statutes, CPLR 3211 and 3212, that effectively weed

---

[10] Notwithstanding defendants' argument to the contrary, our jurisprudence regarding pre-suit demands in derivative actions does not compel a different conclusion.

out claims which are insufficient or meritless; these are the procedural rules that apply when a Cayman company is sued in New York.  Moreover, New York courts are capable of applying Cayman substantive law to decide whether a plaintiff may bring shareholder derivative claims on behalf of a Cayman corporation (see e.g. Winn v Schafer, 499 F Supp 2d 390 [SD NY 2007] [allowing plaintiff to replead after he failed to sufficiently allege standing under Cayman law]; Varga v McGraw Hill Fin. Inc., 147 AD3d 480 [1st Dept 2017], lv denied 29 NY3d 908 [2017] [dismissing complaint where plaintiffs did not show standing under Cayman Islands common law]).  We conclude that because Rule 12A is purely procedural, it imposes no requirement that New York courts conduct a Renova-type hearing. Rather, in New York, we employ our own procedural rules in the CPLR to actions in our courts.

Here, the plaintiff's derivative claims should not have been dismissed on the ground that he failed to comply with Rule 12A.  Rule 12A is a procedural rule that does not apply in the New York courts.  We do not opine on whether, applying the rule of Foss v Harbottle, plaintiff has standing under Cayman Islands common law, a question not reached by the Appellate Division.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, the case remitted to the Appellate Division for further proceedings in accordance with this opinion, and the certified question

answered in the negative.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order, insofar as appealed from, reversed, with costs, case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein and certified question answered in the negative.  Opinion by Judge Feinman. Chief Judge DiFiore and Judges Rivera, Stein, Fahey and Wilson concur.  Judge Garcia took no part.

Decided November 20, 2017